**UNITED STATES of America,
Appellee,**

v.

**Robert FOX, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Bertram C. MORRIS, Appellant.**

**Nos. 24329, 24330.**

United States Court of Appeals,
Ninth Circuit.

April 22, 1970.

Michael D. Garvey (argued), Seattle, Wash., for appellant Fox.

Truman Castle (argued), of Bangs, Castle & Bright, Seattle, Wash., for appellant Morris.

Jerald E. Olson (argued), Asst. U. S. Atty., Stan Pitkin, U. S. Atty., John M. Darrah, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and PECKHAM,* District Judge.

JAMES M. CARTER, Circuit Judge.

Fox and Morris were tried jointly on counts of kidnapping (18 U.S.C. § 1201) and violation of the Mann Act (18 U.S. C. § 2421). A jury found them not guilty of the former and guilty of the latter. Both appeal their convictions to this court. We affirm.

## I

### THE FACTS

We view the facts, as we must, in a light most favorable to the Government. The case against Fox and Morris was based largely on the testimony of Mrs. Juanita McDonald. Mrs. McDonald testified that Fox and Morris enticed her into Fox's car in Portland, Oregon. Fox allowed Mrs. McDonald to drive the car but refused her requests to let her go home. Fox then told Mrs. McDonald to drive them to the motel where Fox and Morris were staying. In the motel parking lot, Mrs. McDonald hit a parked vehicle damaging Fox's car. When Mrs. McDonald attempted to leave, Fox knocked her down and with Morris' help put her back in the car. Fox spoke angrily of the damage to his car and emphasized that Mrs. McDonald would have to pay for it. Morris suggested that Fox "ought to tie [her] up and teach [her] how to be a qualified prostitute." Fox and Morris then drove to a secluded spot where Fox raped Mrs. McDonald. Fox refused Morris' requests to join in the rape because Fox stated she "was for money, not for sport". Mrs. McDonald was taken back to the motel where she spent the night with Fox and was instructed in being a prostitute.

The next morning Fox and Mrs. McDonald were joined by Morris and a girl named Tina Wilson. At about noon, the four left for Seattle, Washington in Fox's car. They made one stop for gas at Woodland, Washington. There Mrs. McDonald called an acquaintance in Portland and asked him to pick up a check that was needed for her mother's support. The four arrived in Seattle in the late afternoon and checked into a motel. Fox and Morris bought some new clothes for the girls and then dropped them in downtown Seattle with instructions to watch out for the police. Later that evening the girls were picked up by Seattle policemen posing as customers. Mrs. McDonald's statements to the police led to the arrest of Fox and Morris.

Fox and Morris both took the stand in their own defense. They testified that they were travelling salesmen and were looking for some fun when they met Mrs. McDonald. They stated that Mrs. McDonald had willingly gotten in the car and at no time had indicated a desire to leave. After the accident with the car, Mrs. McDonald had mentioned she had relatives in Seattle who could help pay for the damage. Both Fox and Morris denied having sexual relations with Mrs. McDonald and denied any intention that either Mrs. McDonald or Tina Wilson should act as prostitutes.

---

* The Honorable Robert F. Peckham, United States District Judge for the Northern District of California, sitting by designation.

## II

### FOX'S CONTENTIONS ON APPEAL

Fox alleges four errors occurred at trial. Significantly, none of the four errors were raised below. Fox asks that we view each as involving plain error under Fed.R.Crim.P., 52(b).

#### A. Claimed Prejudice from Morris' Prior Inconsistent Statement

■ Fox claims error in the failure to instruct the jury that an inconsistent out-of-court statement by Morris could not be used to determine Fox's guilt. At trial Morris testified that he had taken Mrs. McDonald and Tina Wilson from their Seattle motel to a cafe on the afternoon of their arrest. On cross-examination, Morris admitted that he had told police that he had last seen the girls at the motel. Fox now claims that the damage done to Morris' credibility influenced the jury's determination of Fox's guilt.

An examination of the trial record indicates that the parties treated this inconsistency as having little significance. Morris justified the inconsistency by explaining that he had talked to the police before being warned of his rights. Nothing in the statement contradicted any statement of Fox. Nor did the prosecutor mention the inconsistency in closing argument. While Fox was entitled to a favorable instruction had he requested one, it was certainly not mandatory that the court give one without request. Had the court done so, it would have invited error by emphasizing a matter which Fox's counsel had chosen not to contest.

#### B. The Jury Instructions.

Fox's remaining objections involve the instructions given to the jury. He claims they were erroneous in three respects. (1) The instructions did not make clear that Fox could be convicted only if a dominant motive of his trip to Seattle was to accomplish an objective forbidden by the Mann Act. (2) The instructions did not make clear that an "immoral purpose" under the Mann Act did not include "a casual act of intercourse". (3) The instructions did not make clear that Fox's unlawful purpose had to be formulated prior to crossing the Washington border.

The essential part of the instructions appears below.

"As it relates to Count II, the law aims to penalize only those who use interstate commerce with a view toward accomplishing the unlawful purposes, namely, prostitution, debauchery and other immoral purposes. Therefore, to constitute a violation of the law it is essential that the interstate transportation have for its object or be the means of effecting or facilitating these illegal activities.

Before you may find the defendants, or either of them, guilty of the crime charged in Count II you must find an intention that the women named in the Indictment, or either of them, should engage in prostitution at the conclusion of the interstate journey at Seattle, and you must further find that this intention existed in the mind of such defendant before the conclusion of said journey. Further, you must find that the transportation was designed to bring about such result. Without this necessary intention and motivation, immoral conduct before the journey is an insufficient basis upon which to make a finding of guilt.

It is not necessary, however, for the government to prove that the sole and single purpose of the alleged transportation of Juanita Layne McDonald and Tina Jean Wilson to Seattle was for prostitution, debauchery or other immoral purposes. It is only necessary that the government prove that such was one of the dominant purposes."

■ The instructions make clear that the unlawful activities had to be "one of the dominant purposes" of the Seattle trip. This is a common and correct statement of the law. United States v. Bennett (4 Cir. 1966), 364 F.2d 77; Forrest v. United States (5 Cir. 1966),

363 F.2d 348, cert. denied 386 U.S. 995, 87 S.Ct. 1315, 18 L.Ed.2d 343 (1967); United States v. Salter (6 Cir. 1965), 346 F.2d 509, cert. denied 383 U.S. 943, 86 S.Ct. 1196, 16 L.Ed.2d 206 (1966); Dunn v. United States (10 Cir. 1951), 190 F.2d 496. Cf. Bush v. United States (9 Cir. 1959), 267 F.2d 483. We find no merit in Fox's claim that the jury might have misinterpreted the instruction to include situations in which illicit activity was merely incidental to the purpose of the interstate journey.

■ Fox next claims that the jury should have been instructed that the statutory term "immoral purpose" did not encompass "a casual act of intercourse." Fox cites a District Court case, United States v. McClung (D.C. La.1960), 187 F.Supp. 254 as the only authority for this proposition.

Even if we were to accept the rationale behind *McClung*, we find that the instructions did not suggest the consequences feared by Fox. The instructions required a finding that the defendants intended "that the women * * * should engage in prostitution." Further, nothing in the evidence suggested that Fox may have made the trip to Seattle with the intention of engaging in a casual act of intercourse with Mrs. McDonald or Tina Wilson. Mrs. McDonald testified that Fox said she "was for money, not for sport." Fox and Morris testified that the purpose of the Seattle trip was to obtain money to pay for the damaged car.

■ Fox's most meritorious challenge to the instructions involves the time at which the guilty intent had to be formed. The jury was instructed: "'* * * you must further find that this intention [that the women engage in prostitution] existed in the mind of such defendant *before the conclusion of said journey*." [emphasis added]. Fox contends that 18 U.S.C. § 2421 requires that the guilty intent be formed prior to

crossing a state border. Specifically, Fox argues that the instruction permitted the jury to find him guilty if they found he had formed his unlawful intent on the highway in Washington or at the phone stop in Woodland.

The language of the instruction is apparently drawn from Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944). While *Mortensen* has never been overruled, we disapprove of the use of its language relative to the time an unlawful intent must be formed. In certain cases it may confuse the jury as to the elements of the offense and allow an improper conviction. The preferable practice is to instruct that the unlawful intent must be formed before crossing a state line.

The facts of the case at bar however, compel the conclusion that no harm resulted from the instruction. The crucial testimony of Mrs. McDonald as to intent primarily described actions and conversations in Portland. No witness has intimated that any change of intent occurred after reaching the Washington state line and before arriving in Seattle. Mrs. McDonald's testimony, if believed, required a finding that Fox and Morris had decided in Portland to make her their prostitute. Fox and Morris' testimony, if believed, required a finding that no immoral intent had motivated the trip to Seattle. Under these circumstances, we do not find plain error under Fed.R.Crim.P., 52(b).

### III

### MORRIS' CONTENTIONS ON APPEAL

Morris joins Fox in asserting error as to the Mann Act instructions. In addition, he raises several other matters. None require reversal and all can be disposed of briefly.[1]

■ At the trial Morris moved to quash the indictment because the prose-

---

1. After the submission of counsel's appellate brief, Morris was granted permission to file a supplemental brief. Both briefs

have been considered in deciding Morris' appeal.

cutor informed the grand jury foreman that Morris had a "long record." Morris contends that this statement was inaccurate and prejudiced the grand jury's deliberations. The Supreme Court in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) made clear that grand jury proceedings are not governed by the strict evidentiary rules applicable to trial proceedings. A decision to quash an indictment because of the admission of incompetent evidence lies in the sound discretion of the trial court. United States v. Tane (2 Cir. 1964), 329 F.2d 848, 853; Carrado v. United States (1953), 93 U.S.App.D. C. 183, 210 F.2d 712, 717, cert. denied, Atkins v. United States, 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140 (1954).

Morris does not convince us that the trial judge abused his discretion. Competent evidence was presented to the grand jury to enable them to return an indictment. See, Coppedge v. United States (1962), 114 U.S.App.D.C. 79, 311 F.2d 128, cert. denied 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963). In addition, this does not appear to be a case of a deliberate misrepresentation on the part of the prosecutor. Even viewed in their most favorable light, Morris' allegations fall short of stating a case for quashing the indictment.

■ Morris next contends that the evidence failed to show that he was a purposeful participant in any Mann Act violation involving Juanita McDonald. He contends that Mrs. McDonald was "Fox's date" and that he never exercised any rights over her. Mrs. McDonald's testimony gives the lie to this contention. She stated that it was Morris who first mentioned making her a prostitute. Further, Morris was told by Fox that Mrs. McDonald "was for money, not for sport." Both incidents took place in Portland the night before the alleged violation of the Mann Act occurred. It

was not error to allow the jury to decide this issue.

Morris also argues that the evidence was insufficient to permit his conviction for a Mann Act violation involving Tina Wilson. Again, we would disagree. As indicated, the evidence showed that Morris was a knowing and active participant in taking Mrs. McDonald across a state line for purposes of prostitution. Mrs. McDonald testified that Tina Wilson joined the group in Portland shortly before the departure for Seattle. On reaching Seattle, the two girls were similarly outfitted and then put out on the streets together with instructions to check their customers' identification. Both were arrested after having solicited undercover policemen. This evidence would allow reasonable men to infer that Morris had taken Tina Wilson to Seattle in violation of the Mann Act.

■ Lastly, Morris contends that separate instructions for each defendant should have been given the jury. This objection was not raised at trial. No doubt this was because the judge carefully instructed that each defendant was to be considered separately. We certainly find no plain error.

IV

CONCLUSION

The record reflects the vigorous defense that Fox and Morris received at trial. Their acquittal on the kidnapping charges refutes any claim that their interests were not well protected. Likewise counsel were attentive to any inadequacies of proof in the government's Mann Act case. The failure to object to the jury instructions indicated not a lack of competence but a belief that the government's burden of proof and the applicable law generally, had been fairly and clearly stated.

The judgments are Affirmed.