**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Neal KINSLOW,**
**Defendant–Appellant.**

**No. 87–5334.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 1, 1988.

Decided Nov. 8, 1988.

H. Dean Steward, Federal Public Defender, Santa Ana, Cal., for defendant-appellant.

Nancy Wieben Stock, Asst. U.S. Atty., Santa Ana, Cal., for plaintiff-appellee.

Before FLETCHER, CANBY and O'SCANNLAIN, Circuit Judges.

CANBY, Circuit Judge:

James Kinslow was convicted by a jury of kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (counts 1–5), interstate transportation of a minor for sexual purposes, in violation of 18 U.S.C. § 2423 (count 6), interstate transportation of stolen firearms, in violation of 18 U.S.C. § 922(i) (count 8),

fugitive in possession of a firearm, in violation of 18 U.S.C. § 922(g)(2) (count 10), and numerous other firearms and vehicle offenses. On appeal, Kinslow argues that (1) the district court erred in excluding his duress defense; (2) the court committed several errors with respect to its handling of count six; (3) the court erroneously admitted evidence of an alleged rape and of Kinslow's prior record; and (4) the court imposed an illegal sentence. We have jurisdiction under 28 U.S.C. § 1291. We affirm Kinslow's conviction but vacate his sentence and remand the case to the district court for resentencing.

## FACTUAL BACKGROUND

On July 4, 1987, Kinslow escaped from the New Mexico State Penitentiary where he was serving two consecutive life sentences. He slowly made his way to Flagstaff, Arizona and in the early morning hours of July 29, 1987, he broke into the family home of William and Mary Blades. He was armed with a .357 magnum revolver and a .22 caliber revolver.

On that morning, Mary Blades was awakened by the family dog. When she arose to take the dog outside, she encountered Kinslow in the home. Kinslow forced Mrs. Blades to return to the master bedroom, where he tied both Mr. and Mrs. Blades to the bed. He rifled through the lower level of the home and discovered several of Mr. Blades' weapons and ammunition. He loaded the weapons and continued to terrorize Mr. and Mrs. Blades at gunpoint. Eventually, Kinslow realized that there were children in the home; he woke them and tied up the entire family in the master bedroom. At some point during the night, Kinslow untied Mrs. Blades and ordered her to go upstairs with him. While upstairs, a struggle occurred between Mrs. Blades and Kinslow; Mrs. Blades testified at trial that she was raped. Kinslow denied this charge but did concede that some limited sexual contact occurred.

At daylight, Kinslow ordered the family to get into their car and forced them to take him to California. During the trip, Kinslow used a scanner device to monitor police radio transmissions. In Barstow, California, Kinslow ordered the family to pull into a motel and he tied them up in a room. He subsequently left the motel, taking only Malina Blades, age eleven, with him. Kinslow took Malina to Garden Grove, California where he attempted to meet with other fugitives from the New Mexico penitentiary. Malina testified at trial that, at about 12:30 a.m., Kinslow stopped the car in a residential neighborhood and sexually molested her. Expert testimony at trial revealed that Malina had suffered a laceration at the opening of the vagina and samples taken tested positive for semen. At approximately 1:00 a.m., Kinslow dropped Malina off so he could meet his friends and ordered her to wait for him. After he drove away, Malina spotted a marked patrol car, signaled it, and told the police what happened. Kinslow was found in the Blades family car, in possession of the stolen weapons, and he was arrested by the Garden Grove police and the FBI.

After a jury trial and conviction, Kinslow was sentenced to two consecutive life terms on five kidnapping counts and to five years on each of the remaining six counts. In addition, the court ordered, pursuant to 18 U.S.C. § 4205(b)(1), that Kinslow not be eligible for parole until a minimum period of 25 years from the commencement of this sentence.

## DISCUSSION

I. Exclusion of Kinslow's Duress Defense.

■ Kinslow argues that the district court erred in refusing to allow him to present a duress defense to the jury. He contends that the governor of New Mexico had issued a "shoot-to-kill" order against him after he escaped from prison and that he had no choice but to kidnap the Blades family as insurance against this order.

■ The district court did not err in excluding Kinslow's duress defense. To establish a prima facia case for duress, Kinslow must show that (1) he acted under an immediate and illegal threat of death or

serious bodily injury; (2) his fear was well grounded; and (3) there were no other reasonable opportunities to avoid or escape the threatened harm. *United States v. Gordon,* 526 F.2d 406, 407 (9th Cir.1975). In *United States v. Peltier,* 693 F.2d 96 (9th Cir.1982), the defendant argued that he was compelled to plan and execute an armed escape from jail because the United States government had arranged to have him killed while he was in prison. *Id.* at 97–98. We held that the defendant's duress defense was properly excluded because even if his story were true, no imaginable set of circumstances could justify the armed jail break that took place. *Id.* at 98. We noted that the defendant had other opportunities to avoid the perceived danger, such as advising the warden or the prison counselor of his concerns and requesting safe custody. *Id.*

In this case, Kinslow offered no evidence to show that the governor of New Mexico actually issued a "shoot-to-kill" order against him. Even if Kinslow's account of the "shoot-to-kill" order is presumed true, however, Kinslow had other reasonable opportunities to avoid the danger; he could have contacted law enforcement authorities to arrange for a safe surrender. No imaginable set of circumstances could possibly justify kidnapping the Blades family in a neighboring state, some two or three weeks after the governor's alleged order. The district court, therefore, did not commit reversible error in excluding Kinslow's duress defense.

## II. Kinslow's Arguments Regarding Count Six.

Count six charged Kinslow with the interstate transportation of a minor, Malina Blades, for sexual purposes in violation of 18 U.S.C. § 2423. Kinslow argues that the district court should have severed this count from the balance of the indictment. In addition, he argues that his cross-examination of Malina Blades with respect to this count was improperly curtailed. Finally, Kinslow argues that sufficient evidence does not exist to uphold his conviction on this count.

### A. *The Court's Refusal to Sever Count Six.*

Kinslow contends that count six was improperly joined under Federal Rule of Criminal Procedure 8(a) and that even if the court's initial joinder were proper, the court should have severed count six on the ground of prejudice under Federal Rule of Criminal Procedure 14. Rule 8(a) provides for the joinder of two or more offenses if the offenses are (1) of the same or similar character; (2) based on the same act or transaction; or (3) connected together or part of a common scheme or plan. Fed.R. Crim.P. 8(a). Rule 8(a) is to be interpreted broadly in favor of joinder. *United States v. Friedman,* 445 F.2d 1076, 1082 (9th Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971).

■ In this case, the district court's joinder under Rule 8(a) was proper because all of the counts in the indictment were based on the same transaction and were part of a common plan. "Transaction" is a word of flexible meaning that may comprehend a series of related occurrences. *Id.* at 1083. The incidents listed in the indictment all took place within the same 24 hour time period and they all made up part of Kinslow's common plan to get to California with the Blades family as his hostages. Beside the interstate transportation charge involved in count six, Kinslow was also charged with the unlawful transportation of firearms and stolen property. All the illegal transportations occurred in the same vehicle and at the same time. Thus, all the counts of the indictment, including count six, were part of the same transaction. The district court properly permitted the counts to be tried together under Rule 8(a).

■ Kinslow contends that even if Rule 8(a) joinder was proper, the district court should have severed count six under Federal Rule of Criminal Procedure 14. Rule 14 grants the district court discretion to sever claims if it appears that prejudice will result from their joinder. The test under Rule 14 is whether joinder is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and

compels the exercise of the court's discretion to sever." *United States v. Brashier,* 548 F.2d 1315, 1323 (9th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977).

Kinslow argues that after the jury heard the testimony regarding count six, they could not be expected to compartmentalize the proof and objectively evaluate all of the evidence. The record does not indicate, however, that the jury used the evidence adduced on count six to convict Kinslow on the other charges. Indeed, the evidence adduced against Kinslow on the other counts of the indictment was overwhelming; he was caught red-handed, sitting in the Blades' family car with the stolen weapons in his possession. On these facts, it cannot be said that the jury was unable to compartmentalize the evidence and judge each count separately and objectively. Thus, the district court did not abuse its discretion in refusing Kinslow's request for severance under Rule 14.

### B. *The Court's Limitation of Malina Blades' Cross-Examination.*

■ Kinslow contends that the district court improperly limited his cross-examination of Malina Blades, in violation of his rights under the confrontation clause, when it sustained the government's objection to a question on the grounds of privilege.[1] Whether or not a witness holds a certain privilege in a federal criminal trial is an issue governed exclusively by Federal Rule of Evidence 501. A psychotherapist-patient privilege has been recognized and upheld in federal criminal prosecutions, *see United States v. Friedman,* 636 F.Supp. 462, 462–63 (S.D.N.Y.1986), and courts have generally recognized the need to balance the benefit gained by free disclosure with the need to protect the patient and the relationship. *Id.,* at 462. *See also United States v. Brown,* 479 F.Supp. 1247, 1253–54 (D.Md.1979) (recognizing the need to balance the defendant's opportunity to conduct a full cross-examination with the patient's privacy interests).

Regardless of whether a valid privilege existed, however, the district court cannot be said to have abused its discretion in sustaining the government's objection. After the government's objection was sustained, Kinslow's counsel failed to pursue the matter with the court or advise the court of his purpose behind this line of questioning. *See United States v. Martinez,* 776 F.2d 1481, 1485 (10th Cir.1985) (issue of whether the district court erroneously curtailed cross-examination was not properly preserved for appeal where defense counsel failed to object to the curtailment or to explain his purpose behind the line of questioning). On this minimal record, we cannot say that the court committed reversible error in sustaining the government's objection.

### C. *Was Kinslow Properly Convicted on Count Six?*

■ Kinslow contends that the evidence was legally insufficient to support his conviction on count six because sexual misconduct was not a dominant purpose in the transportation of Malina Blades across state lines. In this circuit, a federal crime under 18 U.S.C. § 2423 exists if the immoral activity is "one of the dominant purposes" of the transportation. *United States v. Fox,* 425 F.2d 996, 999 (9th Cir. 1970). It is not necessary, therefore, that the immoral activity be the only purpose of the trip.

■ Kinslow asserts that his only purpose in taking Malina Blades across state lines was to insure his own safe passage from Arizona to California. While this may have been one of his goals, the jury was entitled to find that Kinslow also intended to assert sexual control over the females in the Blades family and that this was one of the reasons he took them all into California. The evidence showed that

---

1. The objection arose during cross examination of Malina, after defense counsel ascertained that she talked to a counselor about the ordeal with Kinslow. Defense counsel asked Malina whether the "counselor has told you not to feel

bad about everything that happened." After the district court sustained the government's objection to this question, defense counsel moved his line of questioning to another area.

before leaving for California, Kinslow raped Mrs. Blades, or at least forced her to engage in some form of sexual activity against her will. A rational trier of fact could have found that one of the dominant purposes in transporting Malina Blades across state lines was to have her available to him for immoral, sexual purposes.

III. The Court's Admission of Evidence.

■■■■ Kinslow contends that the district court erred in admitting evidence that he raped Mrs. Blades in the family's home because the prejudicial impact of this evidence outweighed its probative value. In addition, Kinslow contends that the court erred in allowing the government to question him on cross-examination regarding his prior record.

A. *Evidence of Sexual Abuse of Mrs. Blades.*

Federal Rule of Evidence 403 provides that a district court may exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. Fed.R.Evid. 403. The district judge is given wide latitude in determining the admissibility of evidence under this standard. *See United States v. Layton,* 767 F.2d 549, 554 (9th Cir.1985). In this case, the district court did not abuse its discretion in allowing the evidence of Kinslow's sexual assault upon Mrs. Blades to be admitted at trial.

The evidence regarding Kinslow's assault upon Mrs. Blades was probative of material matters in this case. It served to establish Kinslow's need to exercise power over the females in the Blades family and it provided evidence of Kinslow's orientation and intent under count six. *See United States v. Sangrey,* 586 F.2d 1312, 1315 (9th Cir.1978) (testimony that defendant raped another girl immediately before committing the charged rape admissible to show intent).

We do not find this evidence to have been so unfairly prejudicial that, despite its probative value, its admission was reversible error. It appears from this record as a whole and from Kinslow's motion *in li-*mine that the district judge adequately weighed the probative value and prejudicial effect of this evidence. *See Sangrey,* 586 F.2d at 1315 (court need not make explicit statement of balancing process where defense counsel argued the issue of prejudice in a motion *in limine* and court rejected it). The judge's decision to admit the evidence was within his broad discretion.

B. *Evidence of Kinslow's Prior Criminal Record.*

Kinslow contends that the government should not have been permitted to cross-examine him regarding his 1978 murder convictions, a past escape from a Wyoming jail, and a prior conviction for armed robbery. The testimony regarding the 1978 murder convictions was introduced by Kinslow on direct examination and was plainly reflected in the indictment. Moreover, the jury received a limiting instruction on the use of this evidence. Thus, the admission of this evidence was not an abuse of discretion.

■■■■ The questions relating to Kinslow's escape from a Wyoming jail were permissible to rebut Kinslow's testimony on direct examination that he was not a desperate man out to do any harm. Finally, the evidence of Kinslow's prior robbery conviction was proper impeachment under Federal Rule of Evidence 609, which authorizes impeachment by convictions involving "dishonesty or false statement." Fed.R. Evid. 609. We have held that armed robbery is a crime that involves "dishonesty" and is thus always relevant to the question of a defendant's credibility. *United States v. Oaxaca,* 569 F.2d 518, 527 (9th Cir.), *cert. denied,* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978). Thus, the district court did not abuse its discretion in allowing the government to cross-examine Kinslow on his prior conviction for robbery.

IV. The Legality of Kinslow's Sentence

■■■ The district court sentenced Kinslow to two consecutive life sentences on the kidnapping convictions and ordered, pursuant to 18 U.S.C. § 4205(b)(1), that Kinslow not become eligible for parole until

he served a minimum term of 25 years. Kinslow contends that the district court exceeded its sentencing authority by requiring that he serve 25 years before he could be eligible for parole.

Parole eligibility is governed by 18 U.S.C. § 4205. Section 4205(a) provides that a federal prisoner sentenced to a term of more than one year is eligible for release on parole after serving either one-third of the prescribed sentence or ten years if the sentence is for a term over 30 years or for life, except to the extent that the law provides otherwise. *See* 18 U.S.C. § 4205(a). The next subsection of this statute provides that the sentencing court may impose a minimum term for parole eligibility, if the ends of justice and the best interests of the public require. Although the minimum term set by the court may be less than the mandatory date established in § 4205(a), it must not be "more than one-third of the maximum sentence imposed by the court." 18 U.S.C. § 4205(b)(1).

One possible interpretation of § 4205(b)(1) is that it only authorizes a sentencing court to establish a parole eligibility date *earlier* than the mandatory dates specified in § 4205(a). In *United States v. Gwaltney*, 790 F.2d 1378 (9th Cir.1986), however, we held that the district court did not exceed its authority under 18 U.S.C. § 4205(b)(1) by providing that a defendant had to serve 30 years of his 90 year sentence before becoming eligible for parole. *Id.* at 1388–89. Thus, in this circuit, § 4205(a) does not place a ten year ceiling on the sentencing court's authority to set a minimum term under § 4205(b)(1). The judge may set minimum terms that are longer than the mandatory date so long as the minimum term does not exceed one-third of the maximum sentence imposed by the court. *See id.* Compare *United States v. Castonguay*, 843 F.2d 51, 56 (1st Cir.1988) (district court has no authority under § 4205(b)(1) to provide that defendant must serve 25 years of his 75 year sentence before becoming eligible for parole; rather, defendant must be eligible in ten years) *with Rothgeb v. United States*, 789 F.2d 647, 652 (8th Cir.1986) (§ 4205(b)(1) permits the district court to

require that a defendant sentenced to a term of over 30 years in prison serve longer than ten years before he is eligible for parole).

The issue before us now is whether a minimum parole term in excess of ten years may be imposed under § 4205(b)(1) when the defendant is given a life sentence instead of a term of years. Section § 4205(b)(1) limits the district court's discretion to impose a minimum parole eligibility term by requiring that the minimum term set must not exceed one-third of the maximum sentence imposed. Section 4205(b) offers no guidance on how to calculate one-third of a life sentence. The proviso that "the ends of justice and best interests of the public" be served refers to the district court's initial decision to set a minimum term, not to the length of the term itself. In section 4205(a), however, Congress made it clear that it considered one-third of a life sentence to be ten years. To hold otherwise may grant the district court the unchecked freedom to select any minimum parole term for a defendant sentenced to life. *Accord Rothgeb*, 789 F.2d at 652.

We hold, therefore, that under 18 U.S.C. § 4205, a person sentenced to life imprisonment must become eligible for parole no later than ten years after the commencement of incarceration. Accordingly, the district court's order that Kinslow not be eligible for parole review until 25 years is an illegal sentence. However, *Gwaltney* holds that the sentencing court's authority to set a minimum term under § 4205(b)(1) is not limited to ten years. Therefore, because Kinslow was sentenced to two consecutive life sentences, the district court has the authority to order that he will be ineligible for parole for twenty years. *Cf. In re Advisory Opinion*, 421 A.2d 535 (R.I.1980) (although state law provided that prisoners serving a life sentence were eligible for parole in ten years, prisoners serving two or more consecutive life terms must serve ten years on each sentence before parole). We vacate the sentence and remand this case to the district court for resentencing.

## CONCLUSION

Kinslow's conviction is AFFIRMED. His sentence is VACATED and this case is REMANDED to the district court for re-sentencing.