**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Thong VANG and Neng Vue,**
**Defendants–Appellants.**

Nos. 96–4041, 96–4105.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1997.

Decided Oct. 23, 1997.

Laura A. Przybylinski (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Robert T. Ruth (argued), Madison, WI, for Defendants–Appellants.

John R. Dade, Dade & Weston, Whitewater, WI, for Neng Vue.

Before FLAUM, RIPPLE, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Thong Vang and Neng Vue participated in a six-day, interstate trip in which a group of men repeatedly forced themselves upon three young girls brought along for that purpose. A jury convicted both men under 18 U.S.C. § 2423(b), which prohibits traveling in interstate commerce for the purpose of engaging in a sexual act with a person under eighteen years of age.[1] The District Court sentenced the defendants to the statutory maximum penalty of one hundred and twenty months in prison. Vang and Vue appeal these sentences, as well as the district court's instruction to the jury regarding the elements of a § 2423(b) violation. We affirm the jury's verdicts and the district court's sentences.

## I. BACKGROUND

In November 1995, Thong Vang (age 22) was working as an inspector at a fabrication company in Onalaska, Wisconsin. He was just beginning his first of four years of probation based on a conviction for two counts of first degree sexual assault of a child in La Crosse County Circuit Court.[2] Neng Vue (age 22) was unemployed and living in La Crosse, Wisconsin, with his parents, his wife,

---

**1.** Section 2423(b) states that "[a] person who travels in interstate commerce, or conspires to do so, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, or conspires to do so, for the purpose of engaging in any sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States shall be fined under this title, imprisoned not more than 10 years, or both."

**2.** The circumstances of Thong Vang's prior conviction are disturbingly similar to the instant events. On March 28, 1994, he took a twelve-year-old girl to the Redwood Motel in La Crosse, where he fondled and attempted to rape her. The Circuit Court stayed a four-year prison sentence and ordered him to report to a probation officer for six years after serving one year in the county jail. He did not participate in court-ordered rehabilitation therapy sessions, and the instant offense occurred a little over a month after he was released from jail.

and their two children. Fong Vang,[3] an older friend of the two men, served as the liaison to three young girls—ML (age 13), KL (age 12), and NT (age 12).

Fong Vang picked up ML on November 29 at a shopping mall in La Crosse and took her to the Ranch Motel in LaCrescent, Minnesota. ML spent the night partying and watching television with Fong Vang, Thong Vang, Neng Vue, and some other men. Fong Vang returned to La Crosse the next day with an unidentified male (nicknamed "Midget") to pick up KL and NT at the Logan Middle School. Fong Vang convinced the girls to go with him to the Ranch Motel to visit an ex-boyfriend of NT's who was apparently ill.

When the group arrived in LaCrescent, Fong Vang called Thong Vang and Neng Vue in La Crosse to tell them that he had three girls in a motel room, and instructed them to keep this secret. That night, after Thong Vang and Neng Vue arrived at the motel, the men tricked some of the girls into drinking a mixture of vodka and orange juice. At one point, Thong Vang grabbed KL's arm and squeezed so tightly that she began to cry. Thong Vang also had sexual intercourse with ML while the other two girls were lying nearby. Thong Vang did not spend the night in the motel room, but Neng Vue did not return home until the morning.

The next day, December 1, 1995, Fong Vang drove the girls back to La Crosse to pick up Neng Vue at his house. The group then drove to Thong Vang's house to meet Thong and Chue Her.[4] Both men hopped in Her's car, and the group began a six-hour journey to Des Moines, Iowa. Appellants claimed that the purpose of the trip was solely to visit a friend of Fong and Thong Vang's named Mercedes. Yet, although the trip took approximately six hours, the group stayed with Mercedes for only an hour and declined her invitation for the group to spend

the night. Instead, Fong Vang led the group to the Royal Motel in Des Moines.

The situation turned much uglier at this point. After one of the girls resisted Fong Vang's sexual advances, Neng Vue warned NT that the girls' ride home might be in jeopardy if they did not consent to such advances. He echoed this sentiment to ML by telling her that the men would "ditch them, just leave them there" unless the girls were willing to engage in sexual intercourse. Soon after making this statement, Vue asked ML to convince KL to have sex with Thong Vang.

Neng Vue, however, apparently decided he wanted KL for himself and forced her to have sex with him against her will. KL took a shower afterwards, but when she returned to the room, Vue told her that Thong Vang wanted to have sex with her, too. When she refused, Vue picked her up and carried her to a room in which Fong and Thong Vang were waiting. Thong Vang raped KL when she refused to have sex with him. Thong Vang also had sex with NT that night, and Fong Vang hit and raped NT.

The men continued to torment KL the next morning. One of the men told KL that she could "have it the easy way or the hard way." Despite responding that she "didn't want it any of the ways," Thong Vang raped her while Fong Vang held her down. The men then switched positions, and Fong Vang had sex with KL while Thong Vang held her down. They switched one more time after that. Neng Vue was present in the room during this incident and did nothing to assist KL.

The men moved the girls to another motel in Des Moines later that day, but the second night in Des Moines fortunately did not mirror the nightmare of the first. The men got restless, though, on the following day, December 3. They took the girls across yet

---

**3.** Fong Vang, originally a co-defendant in this action, fled Wisconsin prior to trial. After a two-month continuance, the district court tried Thong Vang and Neng Vue despite Fong Vang's absence. Law enforcement authorities apprehended Fong Vang in Iowa in early 1997 and he was transferred to Wisconsin to stand trial. On May 6, 1997, a jury found him guilty of three counts of transporting minors in violation of 18

U.S.C. § 2423(a). His appeal of those convictions is currently pending before this Court. *See* Docket Nos. 97–2953 & 97–2954.

**4.** A grand jury indicted Chue Her along with the defendants in this case, but he has never been apprehended by law enforcement officials.

another state border and rented two rooms in a motel in Stevens Point, Wisconsin. Fong Vang made a call to invite two of his friends to the motel. When the two unidentified men arrived, Fong Vang left them alone in the motel room with ML and each man had forced sexual intercourse with ML while the other covered her mouth to muffle her screams. In the other room, Thong Vang and Neng Vue forced KL and NT to drink beer, which caused KL to vomit. Vue told KL that she would not get a ride home unless she had sex with Chue Her. The two men then waited in the bathroom while Her had sexual intercourse with KL.

The group left Stevens Point in the middle of the night and checked into a motel in Caledonia, Minnesota. Thong Vang and Chue Her returned to La Crosse at this point. On the following day, Neng Vue and another man (called "Roger") drove all three girls to a Minneapolis apartment. At least one of the residents in the apartment pressured NT to have intercourse with him during the night, and ML testified that the other men were exerting similar pressure on the girls. Fong Vang came to the apartment later and tried unsuccessfully to get KL and NT to have sex with the apartment's owner so the group could stay overnight without paying.

Finally, after the night in Minneapolis, Neng Vue and Roger drove the girls back home to La Crosse. Vue dropped them off in front of the Logan Middle School and ordered them not to say anything about the previous week's events or the men would do "something bad" to them.

Thong Vang, however, did not heed the advice that his co-defendant gave to the girls. During an FBI investigation into the multistate trip, he admitted to Special Agent David Brechwald that he had sex with all three girls between November 30 and December 4. Furthermore, Thong Vang described the way in which Fong Vang recruited him to join the group with veiled promises of sex with the young girls. Neng Vue originally told Special Agent Brechwald that he did not participate in the trip and had only heard about the alleged events. When challenged on this story, though, Vue became

scared and flustered, at one point blurting out that he would make a better witness than a defendant. Based in part on these statements, a grand jury indicted both Thong Vang and Neng Vue on one count of violating 18 U.S.C. § 2423(b).

At trial, the district court instructed the jury that it must acquit each defendant unless the Government proved that "(1) the defendant knowingly traveled in interstate commerce from Wisconsin to Iowa; and (2) at the time the defendant crossed the state line and until he entered Iowa, the defendant had the purpose of engaging in a criminal sexual act with a person under eighteen years of age." Over defense counsel's objections, the district court added the following clarification of this second requirement:

> It is not necessary for the government to prove that a criminal sexual act was the sole purpose for a defendant traveling from one state to another, but the government must prove that it was a dominant purpose, as opposed to an incidental one. A person may have more than one dominant purpose for traveling across a state line.

The Court denied the defendants' request to strike the last sentence and to require a finding that a criminal sexual act was "the" dominant purpose of the trip.

The jury convicted both defendants after a two-day trial. At the defendants' sentencing hearing, the district court followed § 2423(b)'s direction to apply the most relevant of three enumerated sentencing guidelines. Based upon the defendants' use of force and threats in their interaction with the girls, Judge Crabb sentenced Thong Vang and Neng Vue pursuant to U.S.S.G. § 2A3.1. In doing so, Judge Crabb declined to apply the guideline urged by the defendants (§ 2A3.2) because, contrary to their assertions, statutory rape was not the only conduct relevant to their overall culpability. The district court's calculation under § 2A3.1 suggested a sentence between 168–210 months, but the court capped the sentence at one hundred and twenty months—the maximum penalty allowed under § 2423(b).

## II. DISCUSSION

Defendants advance two contentions on appeal. First, they request a new trial because the district court's charge to the jury misstated the required elements of a § 2423(b) violation by permitting a conviction where criminal sexual conduct was not "the" dominant purpose of the defendants' interstate travel. Second, the defendants urge us to order resentencing based on U.S.S.G. § 2A3.2 because the jury's verdict did not specifically include a finding of force or threats. We reject both of these arguments.

### A. The Jury Instruction

■ We review a trial court's instructions to the jury with great deference. As we have stated before, instructions "which are accurate statements of the law and which are supported by the record will not be disturbed on appeal." *Doe v. Johnson,* 52 F.3d 1448, 1456 (7th Cir.1995). Furthermore, even an erroneous jury instruction will demand reversal "only if the jury's comprehension of the issues is so misguided that it prejudiced the complaining party." *United States v. Smith,* 103 F.3d 600, 606 (7th Cir. 1996) (quotation omitted). Both parties agree that the district court's instruction to the jury exhibited a proper interpretation of our circuit's prevailing law in cases involving the Mann Act (18 U.S.C. § 2421), a statutory predecessor and cousin of § 2423(b). The questions on appeal, therefore, boil down to whether we should apply our Mann Act precedent to § 2423(b) cases, whether our long-standing interpretation of the Mann Act is correct, and whether any alleged error in the instruction prejudiced the defendants.

#### 1. *The Mann Act and the Road to Section 2423(b)*

■ Though enacted in 1994, the statutory antecedents of § 2423(b) date back to the early part of this century. The first restriction of this sort was the Mann Act, enacted in 1910 as a weapon against the so-called "white slave trade" in which young women were forced into prostitution or sold outright. The Mann Act, as originally enacted, prohibited the knowing transportation in interstate commerce of any woman or girl "for the purpose of debauchery, or for any other immoral purpose...." Act of June 25, 1910, § 2, 36 Stat. 825 (1910) (amended 1986). Congress made the statute gender-neutral in a 1986 amendment, retired the "purpose" test for interstate transportation, and clarified the amorphous phrase "any immoral purpose" by narrowing the statute's coverage to illegal sexual activity.[5]

Section 2423 evolved from this same legislative initiative as an effort to protect minors from predatory sexual conduct by adults. The legislation originally mirrored the Mann Act except for its application limited to minors and to transportation by common carriers, as well as its use of the phrase "with the intent" rather than "for the purpose" of engaging in immoral conduct. Subsequent amendments eliminated the common carrier requirement and heightened § 2423's resemblance to the Mann Act by adopting the same "any illegal sexual activity" language from § 2421. In 1994, Congress created § 2423(b) in a further attempt to expand the protection of minors. The new statute punishes mere "travel" in interstate commerce—even if no transportation of a minor was involved—if the defendant is found to have traveled "for the purpose of engaging in any sexual act" (as defined in another Code section) with a minor.

Judicial interpretations of the Mann Act necessarily color our reading of § 2423(b) for a number of reasons. As described above, § 2423(b) and the Mann Act are part of the same general legislative framework. More importantly, the crucial language of § 2423(b) employs the same "for the purpose of" phrase used in the original Mann Act and construed by the Supreme Court and a number of lower courts. *See, e.g., United States v. Kinslow,* 860 F.2d 963, 967 (9th Cir.1988)

---

5. The Mann Act, codified at 18 U.S.C. § 2421, today reads:

Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title or imprisoned not more than five years, or both.

(applying Mann Act "purpose" standard to § 2423 cases), *cert. denied,* 493 U.S. 829, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989).[6] Our interpretation of the statutory language in § 2423(b) would necessarily impact that body of precedent; Defendants recognize that reversing their convictions on this basis would seriously erode, if not overrule, our Mann Act cases interpreting the relevant "for the purpose of" language. We are the first court of appeals to consider the scope of § 2423(b),[7] and, for the reasons described above, we find it prudent and helpful to draw upon our Mann Act precedent in this task.[8]

### 2. *Interpretation of the Mann Act*

■ Appellants rely on dicta from two Supreme Court cases involving the Mann Act to support their proposition that § 2423(b) requires the Government to prove that illegal sexual activity with a minor was "the" dominant purpose of their interstate travel. In both cases, the Court found that there was no immoral purpose at all in the relevant interstate transportations and had no occasion to consider the possible effect of multiple motivations. In *Hansen v. Haff,* 291 U.S. 559, 561, 54 S.Ct. 494, 494–95, 78 L.Ed. 968 (1934), a citizen of Denmark appealed her order of deportation based on an alleged entry into the United States for immoral purposes. The petitioner, a domestic servant in Los Angeles, became sexually involved with a married man. She accompanied this man on a business trip to Europe and a brief tour of the Pacific Northwest. She was arrested upon her return to America based on her admission that she intended to continue the adulterous relationship until she returned

to Los Angeles. The Court held that the woman's purpose in returning to America was to resume her job as a servant, not to continue her immoral conduct. *Id.* at 562, 54 S.Ct. at 495. In a notable passage, the Court explained that "[p]eople not of good moral character like others, travel from place to place and change their residence. But to say that, because they indulge in illegal or immoral acts, they travel for that purpose, is to emphasize that which is incidental and ignore what is of primary significance." *Id.* at 562–63, 54 S.Ct. at 495.

The Court also reversed the Mann Act convictions of a husband and wife who operated a house of prostitution in *Mortensen v. United States,* 322 U.S. 369, 372, 64 S.Ct. 1037, 1039–40, 88 L.Ed. 1331 (1944). Two young prostitutes from the house accompanied the couple on an automobile trip from Nebraska to Utah. It was undisputed that this was "purely a vacation trip" and did not involve acts of prostitution or other immorality. *Id.* When the girls returned to the couple's house, however, they resumed their wayward ways. The Court reversed the convictions because the trip itself lacked an immoral purpose; an immoral purpose could not be found automatically simply because the travelers were immoral people. To illustrate this point, the Court stated:

> To constitute a violation of the Act, it is essential that the interstate transportation have for its object or be the means of effecting or facilitating the proscribed activities.... An intention that the women or girls shall engage in the conduct outlawed by Section 2 must be found to exist

---

**6.** The familial relationship between § 2423(b) and the Mann Act suggests that Congress intended the same meaning for identical phrases in the two statutes. *See Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 570, 115 S.Ct. 1061, 1067, 131 L.Ed.2d 1 (1995) (giving same meaning to two words in two different sections of the Securities Act of 1933).

**7.** Two other circuits have heard appeals of sentences imposed for violations of § 2423(b). *See United States v. Canada,* 110 F.3d 260 (5th Cir. 1997); *United States v. Butler,* 92 F.3d 960 (9th Cir.1996). In addition, one circuit reversed a defendant's conviction under § 2423(b) because, at the time of his conviction for crossing state lines to have sex with a minor, a drafting error

caused the statute to define "sexual act" by reference to a statute punishing only criminal sexual abuse resulting in death. *See United States v. Childress,* 104 F.3d 47, 53 (4th Cir.1996).

**8.** We find additional support in this Court's broad reading of the phrase "for the purpose of" in other contexts. *See, e.g., United States v. Church,* 970 F.2d 401, 406 n. 1 (7th Cir.1992), *cert. denied,* 506 U.S. 1065, 113 S.Ct. 1009, 122 L.Ed.2d 157 (1993) (stating that civil forfeiture statute applied to a house used for both drug sales and legitimate purposes); *United States v. Anderson,* 809 F.2d 1281, 1287 (7th Cir.1987) (stating that use of the mails "in furtherance of" a fraudulent scheme satisfied the statute's "purpose" requirement).

before the conclusion of the interstate journey and must be *the dominant motive* of such interstate movement.

*Id.* at 374, 64 S.Ct. at 1040 (emphasis added). The dicta of later Supreme Court cases included this phrase in descriptions of Mann Act violations. *See Hawkins v. United States,* 358 U.S. 74, 79, 79 S.Ct. 136, 139, 3 L.Ed.2d 125 (1958) ("[T]he only factual issue in the case was whether petitioner's dominant purpose in making the trip was to facilitate her practice of prostitution...."); *Cleveland v. United States,* 329 U.S. 14, 20, 67 S.Ct. 13, 16, 91 L.Ed. 12 (1946) ("There was evidence ... that the unlawful purpose was the dominant motive.").

The lower courts, however, have read the Mann Act broadly and have not deemed themselves bound by the narrow interpretation that *Hansen* and *Mortensen*'s dicta might suggest. Instead, many circuits have upheld jury instructions and convictions where an immoral purpose was "at least one of the purposes motivating the interstate transportation." *United States v. Bennett,* 364 F.2d 77, 78 (4th Cir.1966). *See also, e.g., Daigle v. United States,* 181 F.2d 311, 315 (1st Cir.1950) (affirming conviction because district court was "warranted in finding that at least one of the purposes of the interstate transportation was to engage in conduct outlawed by the Act"); *Long v. United States,* 160 F.2d 706, 710 (10th Cir. 1947) (affirming conviction because jury was "warranted in finding that at least one of the purposes of the interstate transportation was to engage in conduct outlawed by the Act"). Other courts have used a "dominant purpose" standard, but have regarded "dominant" as synonymous with "compelling" or "motivating," and they have never held—as Defendants urge here—that interstate travel can have only one dominant purpose. *See, e.g., United States v. Fox,* 425 F.2d 996, 999 (9th Cir.1970) (approving a jury instruction

that did not require the "government to prove that the sole and single purpose of the alleged transportation of [the victims] was for prostitution, debauchery or other immoral purposes. It is only necessary that the government prove that such was one of the dominant purposes."); *United States v. Salter,* 346 F.2d 509, 511 (6th Cir.1965) ("It was not necessary to prove that the interstate transportation was for the sole purpose of prostitution. It is sufficient if prostitution was only one of the dominant purposes."), *cert. denied,* 383 U.S. 943, 86 S.Ct. 1196, 16 L.Ed.2d 206 (1966); *Reamer v. United States,* 318 F.2d 43, 49 (8th Cir.) (Blackmun, J.) ("It must be an 'efficient purpose', albeit one of several, as distinguished from an incidental one."), *cert. denied,* 375 U.S. 869, 84 S.Ct. 129, 11 L.Ed.2d 95 (1963); *Nunnally v. United States,* 291 F.2d 205, 208 (5th Cir. 1961) ("Of course, prostitution or such immoral purpose need not be the sole motive for the interstate trip. It is sufficient if it is one of the principal purposes."); *Dunn v. United States,* 190 F.2d 496, 497 (10th Cir. 1951) ("It is enough that one of the dominant purposes was prostitution or debauchery. It suffices if one of the efficient and compelling purposes in the mind of the accused in the particular transportation was illicit conduct of that kind."). Indeed, courts across the country have approved "dominant purpose" jury instructions similar to the one challenged here by Defendants.[9] More recent cases have consistently maintained—or even extended—this broader construction of the Mann Act. *See United States v. Campbell,* 49 F.3d 1079, 1083 (5th Cir.) ("[M]any purposes for traveling may exist, but, as long as one motivating purpose is to engage in prostitution, criminal liability may be imposed under the Act. When no dominant purpose exists, it is because any such purpose was either non-existent or 'incidental'."), *cert. denied,* — U.S. —, 116 S.Ct.

9. For example, in *United States v. Drury,* 582 F.2d 1181, 1185 (8th Cir.1978), the court approved the following instruction to the jury:

In order to establish that interstate transportation or travel was for an "immoral purpose", the evidence in the case need not show that prostitution was the only purpose of the transportation or travel. A person may have several different motives or reasons for doing a partic-

ular act such as travelling; and all such reasons may, in varying degrees, prompt the act of making a particular trip or journey. Proof of an "immoral purpose" is sufficient if the evidence in the case establishes beyond a reasonable doubt that ... prostitution was one of the dominant purposes of such interstate travel.

201, 133 L.Ed.2d 135 (1995); *United States v. Ellis,* 935 F.2d 385, 389 (1st Cir.) (approving jury instruction requiring the Government to "prove that the defendant's immoral purpose was not a mere incident of the trip or trips, but instead was at least one of the defendant's motivations for taking the trip in the first instance."), *cert. denied,* 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991).

One of the most persuasive holdings in this area has come from our circuit. In *United States v. Snow,* 507 F.2d 22, 23 (7th Cir. 1974), with then-Judge Stevens writing, the Court affirmed a Mann Act conviction in which the Government acknowledged that the defendant had a legitimate reason alongside his immoral motivation for interstate travel. *Snow* addressed almost the identical issue presented by Defendants in this appeal: whether the Mann Act punishes immoral conduct that was "a" dominant purpose, but perhaps not "the" dominant purpose, of interstate transportation. The Court aligned itself with the unanimous consensus of courts by noting that "[i]t now appears settled that prostitution or other immoral conduct, need not be the sole reason for the transportation; the Act may be violated if prostitution is a dominant or a compelling and efficient purpose." *Id.* at 24 (footnotes omitted). The use of the word "dominant" in *Mortensen* was merely dicta, the Court said, and therefore did not command a narrow reading of the statutory language of the Mann Act. Acknowledging the cognitive dissonance caused by using the word "dominant" in this definitional context, the court nonetheless rejected the argument put forward by Defendants on appeal in this case: "Despite the contrary implication suggested by the word 'dominant,' [an immoral purpose] need not be the most important of defendant's reasons when multiple purposes are present." *Id.* *Snow* remains good law in our circuit. *See, e.g., United States v. Wolf,* 787 F.2d 1094, 1097–98 (7th Cir.1986).

### 3. Defendants' Contentions on Appeal Must Fail

In light of the foregoing discussion, it should come as no surprise that we are un-willing to overrule our own firmly established precedent and thrust ourselves into conflict with every other circuit that has considered this issue. Accordingly, we hold that the district court's instructions to the jury interpreting § 2423(b)'s "purpose" element properly reflect this circuit's law. At the most fundamental level, the defendants fail to convince us that *Mortensen's* use of the word "dominant" grafted a new requirement onto the Mann Act that an immoral purpose must be "the dominant purpose" of interstate travel.[10] Congress has not used the word "dominant" in either the Mann Act or § 2423(b), and we are not prepared to read such a requirement into the statutes. Assuming the existence of such a requirement and assuming that precedent was irrelevant, we might agree with Defendants that, because "dominant" means "prevailing over all others," Webster's Ninth New Collegiate Dictionary 374 (1990), it should follow that there can be only one dominant purpose of any endeavor. Courts, though, have consistently used the word "dominant" to mean merely "significant" or "compelling" or "efficient"; there has never been any implied requirement of preeminence of purpose. We are simply not willing to break ranks with our sister circuits on this matter for the sake of semantic purity.

We must also reject the defendants' contention that the Rule of Lenity counsels a different result. This rule of statutory construction applies only if there is a "grievous ambiguity or uncertainty in the language and structure of the Act." *United States v. Neal,* 46 F.3d 1405, 1410 (7th Cir.1995) (en banc) (quoting *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1271–72, 39 L.Ed.2d 782 (1974)). As mentioned above, the word "dominant" does not appear in sec. 2423(b). The dicta of *Mortensen* remains nothing more than a judicial gloss upon the clear language of the statute. The concerns of fair notice and arbitrary enforcement that animate the Rule of Lenity are not implicat-

---

10. We note that the defendants' contention is weakened by the Supreme Court's numerous refusals over the past fifty years to correct this prevailing understanding of the Mann Act and its companion statutes.

ed by allowing a conviction under § 2423(b) when criminal sexual activity with a minor is "a" purpose, though perhaps not "the" purpose, of interstate travel.

Accordingly, we affirm the defendants' convictions under § 2423(b).

## B. Selection of the Appropriate Sentencing Guideline

In § 2423(b) cases, Appendix A of the Sentencing Guidelines directs a district court to apply the most relevant of three sentencing guidelines: § 2A3.1 (criminal sexual abuse involving force), § 2A3.2 (statutory rape), or § 2A3.3 (criminal sexual abuse of a ward). Section 1B1.3 of the Guidelines further instructs courts to make this determination based upon all acts committed by the defendants and their codefendants in the commission of their criminal violations. In this case, the district court deemed § 2A3.1 most applicable because the defendants hit, threatened, and raped their victims. Defendants contend that Judge Crabb should have applied § 2A3.2 because the jury's verdict did not include a finding of any violent activity. They also argue that, at the time of the relevant travel, they did not intend to engage in such forced sexual activity. Thus, they claim, the district court should have employed the Guideline applicable to offenses that are deemed criminal only by virtue of the victims' ages. We reject these arguments and affirm the defendants' sentences as calculated by the district court.

We give *de novo* review to a district court's selection of the applicable Sentencing Guideline, but we will only disturb clearly erroneous factual findings made in the course of this selection. *United States v. Wimberly*, 60 F.3d 281, 287 (7th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 744, 133 L.Ed.2d 693 (1996); *United States v. Dion*, 32 F.3d 1147, 1148 (7th Cir.1994). We will accept the sentencing judge's determination of relevant conduct so long as it is supported by a preponderance of the evidence and does not exhibit clear error. *United States v. Townsend*, 73 F.3d 747, 751–53 (7th Cir. 1996).

Judge Crabb properly selected § 2A3.1 as the most applicable Guideline in this case. The district court was not required to select a guideline based only on the conduct comprising the § 2423(b) violation. *See United States v. Matthews*, 116 F.3d 305, 307 (7th Cir.1997). *See also* U.S.S.G. § 1B1.3, comment. (n.1) ("[T]he focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator."). Rather, the Guidelines expressly instruct judges to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction...." U.S.S.G. § 1B1.3(a)(1)(A). It is therefore irrelevant that Thong Vang and Neng Vue might not have possessed an intent to engage in forcible sexual activity when they traveled in interstate commerce. It is enough that they eventually committed such acts during the trip.

Ample evidence supported the district court's finding that the defendants employed force and threats—including rape—against the victims in this case. On the first night in Des Moines, for instance, Neng Vue threatened NL with abandonment if she did not have sex with his friends. More disturbingly, that night, Vue raped KL and then carried her to another room where Thong Vang also raped her. The next morning, both Fong and Thong Vang forcibly raped KL while the other held her down; Neng Vue watched all or part of these rapes. When the group went to Stevens Point, Fong Vang left ML alone in a room with two unidentified men who both raped her. Also in Stevens Point, Neng Vue told KL that she would not get a ride home unless she had sex with Chue Her (which she did). There was simply no shortage of evidence suggesting that § 2A3.1 was the most appropriate guideline to apply, and we affirm the district court's selection.

### III.  CONCLUSION

For the foregoing reasons, we affirm the defendants' convictions under 18 U.S.C. § 2423(b) and sentences pursuant to U.S.S.G. § 2A3.1.