**UNITED STATES of America,**
**Appellee,**

v.

**James Walter BENNETT, Appellant.**

**Nos. 9728, 9729.**

United States Court of Appeals
Fourth Circuit.

Argued July 2, 1965.

Decided July 25, 1966.

F. Dean Rainey, Jr., Greenville, S. C. (court-assigned counsel), for appellant.

Ernest J. Howard, Asst. U. S. Atty. (John C. Williams, U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge:

The appellant, James Walter Bennett, was prosecuted under two indictments charging him with separate violations of the White Slave Traffic Act, 18 U.S.C. § 2421 (1964). The first indictment charged Bennett with transporting Deborah Videtto from Spartanburg, South Carolina, to Chattanooga, Tennessee, in June 1963, in violation of the

statute. The second indictment charged that Bennett, and a codefendant, Grady Lee Jolley, violated the statute in transporting Mrs. Videtto and Sherrie Gossett from Spartanburg to Chattanooga in September of 1963. Bennett pleaded not guilty to both indictments.[1] Agreeable to the provisions of Rule 13 of the Federal Rules of Criminal Procedure, the indictments were tried together. The only issue raised by the defendant at trial was the purpose of the interstate transportation. Bennett freely admitted that he had taken the women on the trips charged in the indictments.

At the trial Mrs. Videtto testified that it was Bennett's purpose in transporting her to Chattanooga in June that she should engage in prostitution and he would share in the money received therefrom. Jolley testified that prostitution was also the purpose of Bennett's interstate transportation of the two women in September.[2] Bennett denied that either trip was so motivated. He testified that the real purpose of his June trip was to visit his wife, or former wife, who was then living in Chattanooga, and that he took Mrs. Videtto along merely for company. With respect to the second trip, he testified that his purpose was to obtain money unlawfully by passing bad checks and using presumably stolen credit cards then in the possession of Jolley and that the two women were taken along to assist in this venture because Bennett thought that a woman could more easily cash checks in a strange place than could a man. Bennett did admit on cross-examination that he had left Spartanburg on

each occasion with the intent of having intercourse with his female companion in Chattanooga should she respond to his advances.[3] The jury returned a verdict of guilty on each indictment, and the court sentenced Bennett to a four-year prison term on each, the sentences to run consecutively.

The pertinent portion of the White Slave Traffic Act makes it a crime to knowingly transport in interstate commerce

"* * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice * * *." 18 U.S.C. § 2421 (1964).

It has long been established that the broad provisions of the statute apply not only to commercialized vice, i. e., prostitution, but also to the interstate transportation of a woman with the intent and purpose of engaging in immoral sexual acts and practices. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); Simon v. United States, 145 F.2d 345 (4 Cir. 1944). However, whether the immoral activity is of a commercial or noncommercial nature, the courts, including this court, are in substantial agreement that such activity must be at least one of the purposes motivating the interstate transportation.[4] A mere incidental intent on the part of the transporter to engage in

---

1. Jolley pleaded guilty to the second indictment.

2. Jolley testified that both girls did prostitute themselves in Chattanooga on the second trip. Mrs. Videtto denied on the stand that she earned her livelihood by such means on either trip. Miss Gossett did not testify.

3. On the first trip, Bennett and Mrs. Videtto registered as man and wife under fictitious names at a Chattanooga hotel. Bennett followed the same procedure with Miss Gossett on the second trip. However, in each instance the parties denied

having had sexual relations with each other.

4. See Nunnally v. United States, 291 F.2d 205, 208 (5 Cir. 1961); Bush v. United States, 267 F.2d 483, 485 (9 Cir. 1959); Masse v. United States, 210 F.2d 418, 421 (5 Cir.), cert. denied, 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105 (1954); Daigle v. United States, 181 F.2d 311 (1 Cir. 1950); Mellor v. United States, 160 F.2d 757, 764 (8 Cir.), cert. denied, 331 U.S. 848, 67 S.Ct. 1735, 91 L.Ed. 1858 (1947); Long v. United States, 160 F.2d 706, 709 (10 Cir. 1947); Simon v. United

immoral practices during or at the conclusion of the journey is not sufficient to constitute a violation of the statute if the reason or reasons motivating the transportation are unrelated to immoral practices.[5]

Bennett contends that the trial court's charge did not clearly apprise the jury of the unlawful purpose required by the statute; that it in fact misled the jury into thinking that defendant's admitted intent to have sexual intercourse with the women if he could persuade them was a sufficient basis upon which to return a guilty verdict even if that intent was only incidental to the trip and did not motivate it.

■■ Certain portions of the court's charge, read in isolation, might be considered objectionable, not because of inaccuracies but because they were incomplete with respect to the "purpose" element. These isolated statements were clearly intended to explain certain aspects of the law relative to violation of the statute, such as the application of the statute to noncommercialized vice. But it has long been recognized that it is often difficult if not impossible to formulate each separate portion of the charge so that it will be absolutely complete within itself. Consequently, the charge to the jury is to be considered in its entirety and as a whole in determining its adequacy and correctness.[6] When the charge here is so viewed and considered we reach the conclusion that the jury was not misled and that they fully understood that immoral activities must be found to be a "purpose" of the interstate transportation.

■ Furthermore, although given the opportunity, the defendant interposed no objection to the charge pursuant to the requirements of Rule 30 of the Federal Rules of Criminal Procedure nor did he offer, suggest or request an instruction which would tend to clarify and thus eliminate the uncertainty, now asserted, as to the correctness and sufficiency of the charge. We find no error or defect so plain as to warrant notice by the court, *sua sponte*, in the absence of objection below.[7]

Affirmed.

States, 145 F.2d 345, 347 (4 Cir. 1944); Van Pelt v. United States, 240 F. 346, 349 (4 Cir. 1917).

Some confusion as to the precise nature of the statutory "intent and purpose" has emanated from the Supreme Court's dictum in Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944), that "[a]n intention that the women or girls shall engage in the conduct outlawed by section 2 * * * must be the *dominant motive* of such interstate movement." 322 U.S. at 374, 64 S.Ct. at 1040. (Emphasis added.) As is apparent from the cases cited above in this footnote, the courts have not generally followed that test, although such test has on occasion been paid lip service. See DeVault v. United States, 338 F.2d 179, 182 (10 Cir. 1964); United States v. Hon, 306 F.2d 52 (7 Cir. 1962); Long v. United States, supra. As pointed out by this court in Dingess v. United States, 4 Cir., 315 F.2d 238, 240 n. 2, petition for cert. dismissed, 373 U.S. 947, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963), the "dominant motive" test seems completely inappropriate in any case involving multiple purposes, some of which are legitimate but one of which is proscribed by § 2421. The *Mortensen* case is distinguishable since the evidence there disclosed nothing more than an entirely innocent purpose.

5.  See United States v. Hon, supra, note 4, 306 F.2d at 55; Nelms v. United States, 291 F.2d 390, 393 (4 Cir. 1961) (dictum); Mellor v. United States, supra, note 4; Long v. United States, supra, note 4; Yoder v. United States, 80 F.2d 665, 672 (10 Cir. 1935); Van Pelt v. United States, supra, note 4.

6.  See Burwell v. United States, 137 F.2d 155 (4 Cir. 1943).

7.  See Rule 10, section 8, Rules U.S. Court of Appeals, Fourth Circuit, 28 U.S.C.A. p. 255.