**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Oscar Leon Franklin SNOW, a/k/a**
**Hank Snow, Defendant-Appellant.**

**No. 74–1507.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1974.

Decided Dec. 11, 1974.

James L. Cobb, Jr., W. Robert Lotz, Jr., Covington, Ky., for defendant-appellant.

Steven C. Underwood, U. S. Atty., and John R. Byrnes, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before STEVENS and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*

STEVENS, Circuit Judge.

This appeal questions the sufficiency of the evidence of defendant's illegal intent. He was found guilty of violating the Mann Act by transporting Kathy Rogers from Covington, Kentucky, to Hurley, Wisconsin, "for the purpose of prostitution."[1]

The case is somewhat unusual because, even under the government's interpretation of the evidence, defendant had a legitimate reason for taking Rogers to Wisconsin. Whether the legitimate reason was as important as the illegitimate is doubtful, but we certainly cannot say that Rogers' prostitution was defendant's sole reason for transportation, and the trial judge, who tried the case without a jury, did not find that it was *the* dominant reason. Before discussing the evidence we pause to explain our understanding of the government's burden of proof on the intent issue in a Mann Act case.

█ The government must prove that an intention to have females engage in immoral conduct is *a* dominant purpose for the interstate trip.[2] As it is often

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. 18 U.S.C. § 2421 provides, in part, that it is unlawful to "knowingly transport in interstate . . . commerce . . . any woman or girl for the purpose of prostitution."

   The grand jury charged that, on or about September 29, 1972, defendant

   "knowingly did transport in interstate commerce from Covington, Kentucky to Hurley,

in the Western District of Wisconsin, a woman, that is, Kathy Rogers, for the purposes of prostitution, debauchery, and other immoral purposes."

2. *See, e.g.,* United States v. Kotakes, 440 F.2d 342, 345–346 (7th Cir. 1971), cert. denied, 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696: ". . . it is well settled that to sustain a conviction under the Mann Act it is not necessary that the sole purpose of the transportation be for immoral purposes, it being suffi-

stated, the dominant purpose test is somewhat ambiguous, both with respect to the precise purpose which is relevant and also with respect to how important the illegal purpose must be when additional motives are present.

■■ In a criminal case we must be concerned with the intent of the defendant on trial.[3] The purpose of the travelers as a group, or even the purpose of the female passenger, is relevant only insofar as it sheds light on the defendant's intent. Moreover, when examining defendant's purpose, the appropriate inquiry is not merely his reason for making the trip but, more precisely, his reason for taking a female companion with him. If the evidence indicates a single-minded reason for her presence, notwithstanding additional motivation for the trip itself, guilt would attach even if the government had the burden of proving that immoral conduct was "*the* dominant purpose" rather than merely "*a* dominant purpose" of the transportation. The distinction between "the" and "a" becomes significant only if the defendant may have had more than one reason for transporting the female.[4]

■ The use of the word "dominant,"[5] as well as one sentence in the *Mortensen* opinion,[6] indicate that the immoral purpose must be the defendant's most significant motivation. The statement in *Mortensen*, however, is clearly dictum because, as the Supreme Court analyzed the record in that case, the purpose of the Mortensens' trip was entirely innocent.[7] It now appears settled that prostitution or other immoral conduct, need not be the sole reason for the transportation;[8] the Act may be violated if prostitution is a dominant or a compelling and efficient purpose.[9] Despite the contrary implication suggested by the word "dominant," it need not be the most important of defendant's reasons when multiple purposes are present.

In the case before us we assume, as defendant argues, that he had substantial legitimate reasons for transporting Rogers from Kentucky to Wisconsin.[10]

---

cient if it was a dominant or an efficient and compelling purpose. Forrest v. United States, 5 Cir., 363 F.2d 348, 349–351 (1966), and cases therein cited."

3. *See* United States v. Harris, 480 F.2d 601 (6th Cir. 1973), cert. denied, 414 U.S. 977, 94 S.Ct. 298, 38 L.Ed.2d 221; United States v. Hon, 306 F.2d 52, 57 (7th Cir. 1962) (Swygert, J., dissenting).

4. *See* Dingess v. United States, 315 F.2d 238, 240 n. 2 (4th Cir. 1963), cert. dismissed, 373 U.S. 947, 83 S.Ct. 1559, 10 L.Ed.2d 703.

5. Defined by Webster as "commanding, controlling, or having supremacy or ascendancy over all others. . . ."

6. "An intention that the women or girls shall engage in the conduct outlawed by § 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement."

Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 1040, 88 L.Ed. 1331.

7. After characterizing the journey as "an innocent vacation trip in no way related to the practice of their commercial vice," in contrast to the immoral purposes condemned by the statute, the Court stated: "Here the interstate round trip had no such purpose and was in no way related to the subsequent immoralities in Grand Island." 322 U.S. at 377, 64 S.Ct. at 1041.

8. *See, e.g.,* United States v. Tyler, 424 F.2d 510, 512 (10th Cir. 1970), cert. denied, 400 U.S. 839, 91 S.Ct. 78, 27 L.Ed.2d 73; United States v. Bennett, 364 F.2d 77, 78–79 & n. 4 (4th Cir. 1966).

9. United States v. Kotakes, 440 F.2d 342, 345–346 (7th Cir. 1971), cert. denied, 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696; United States v. Lomas, 440 F.2d 335, 338 (7th Cir. 1971), cert. denied, 404 U.S. 842, 92 S.Ct. 137, 30 L.Ed.2d 76; United States v. Auterson, 347 F.2d 503, 504–505 (7th Cir. 1965). *See generally* authority cited in United States v. Salter, 346 F.2d 509, 511 (6th Cir. 1965), cert. denied, 383 U.S. 943, 86 S.Ct. 1196, 16 L.Ed.2d 206.

10. According to defendant, the owner of the "Showbar" nightclub in Hurley, Dick Mattrella, needed women solely to dance and solicit drinks during the busy hunting season. Since the pay expected for this job was better than that which they had been receiving in Covington, Lee Higgins, Carol Stegall and Kathy Rogers, who had experience dancing and "B-drinking," decided to leave Covington. Since defendant had been living with Rogers and Higgins, and since Mattrella also offered him

Nevertheless, when considered in the light most favorable to the government,[11] the evidence establishes that defendant had been taking all of Rogers' earnings while they lived together in Covington;[12] that he became aware of the significant employment possibilities for prostitutes working at the "Showbar" and of the fact that "the money was good";[13] that he "talked" Rogers into becoming a prostitute;[14] that at the time of the interstate transportation, he was cognizant of Rogers' intention to engage in prostitution;[15] that he gave Rogers certain directions with respect to her prostitution;[16] that Rogers engaged in prostitution on an average of two or three times per week in Hurley;[17] that defendant, on at least one occasion, forced Rogers to remain there;[18] and that defendant took all of the earnings derived from Rogers' prostitution, as well as from her work as a dancer and "B-drinker."[19]

Defendant's intent may, of course, be inferred from the conduct of the parties within a reasonable time before and after the transportation.[20] Unquestionably, an important reason for taking Rogers to Wisconsin was to make it possible for her to engage in prostitution and thereby contribute to defendant's financial support.[21] Even if we make the assumption that this was not the sole, or even the most important reason for her transportation, we have no doubt that it satisfies the dominant purpose test as we understand it. In short, there was sufficient evidence to prove that defendant transported Rogers "for the purpose of prostitution" within the meaning of the Mann Act because *her* prostitution was one of *his* "dominant" purposes.[22]

---

a job, room and board and a chance to hunt, he agreed to drive the women.

11. *See* Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Goff, 430 F.2d 396, 397 (7th Cir. 1970).

12. Tr. 32. There is nothing in the record which indicates that defendant ever actually received any substantial income other than that provided by Kathy Rogers and the other women with whom he associated.

13. Tr. 173–74.

14. The quoted language is from the testimony of Rogers (Tr. 49). She also testified during cross-examination that it was defendant's "intention" that she become a prostitute once she reached Hurley (Tr. 54). *See also* Tr. 31, 41. Rogers had apparently not engaged in prostitution before going to work at the "Showbar" (Tr. 14).

15. See note 14 *supra*. Also, during the interstate trip, Rogers and Higgins conversed in defendant's presence; they talked about "tricking" once they arrived (Tr. 13, 54) and Rogers was instructed on how to "go about turning tricks" (Tr. 23–24). At some point in the conversation, defendant told the women to charge a minimum of $50 per "trick" (Tr. 14) and not to "turn any tricks during working hours; do it after work, take them to the motel" (Tr. 15).

16. See note 15 *supra*. When they reached Hurley, defendant told Rogers to "dance and get all the drinks you can, and if you find a possible trick, see him after work, but check him out first" (Tr. 16). On one occasion in Hurley defendant refused the money which Rogers earned from an evening's work. He destroyed the money and beat Rogers, saying that she had not received enough (Tr. 18–19). Apparently she had received only $50; her normal fee for an evening was $250 (Tr. 18).

17. Tr. 17, 52.

18. Rogers left Wisconsin shortly after arriving there. She returned, however, a few days later after defendant called her and said "either I [Rogers] came back or the guys [defendant's motorcycle 'club'] would find me and bring me back" (Tr. 20).

19. Tr. 18–19, 46.

20. United States v. Tyler, 424 F.2d 510, 512 (10th Cir. 1970), cert. denied, 400 U.S. 839, 91 S.Ct. 78, 27 L.Ed.2d 73; Flanagan v. United States, 308 F.2d 841, 842 (5th Cir. 1962).

21. Defendant has emphasized that Rogers spent six nights per week working as a dancer and "B-girl" and that her earnings from these activities amounted to approximately $160 per week. It is perhaps sufficient to note that she could make over 50% more for just one night of prostitution. See note 15 *supra*.

22. In the present case the trial judge's explanation of his denial of the motion for acquittal, read out of context, might indicate that he merely considered it necessary to find that defendant was aware of Rogers' intent to engage in prostitution. In view of the record as a whole, including the fact that defendant has not questioned the trial judge's interpretation of the law, we are satisfied that such a narrow interpretation of the judge's oral comment, which merely restated the dominant

Our holding today is not foreclosed by United States v. Hon, 306 F.2d 52 (7th Cir. 1962).[23] Nevertheless, to the extent that *Hon* may be considered inconsistent with this decision,[24] we expressly disapprove of that case and endorse the analysis in Judge Swygert's dissenting opinion.[25]

The judgment of conviction is Affirmed.

purpose test as it has repeatedly been phrased in appellate court opinions, would be unwarranted.

23. Judge Schnackenberg, who authored the majority opinion in *Hon*, later described it as a case in which

". . . the purpose of an interstate automobile trip by defendant was to enable a prostitute to visit her mother and child and her resort to her trade en route in the state of Indiana was in furtherance of the journey, which was not for an immoral purpose."

United States v. Auterson, 347 F.2d 503, 505 (7th Cir. 1965). *See also* Judge Schnacken-

berg's opinion for the court in United States v. Eddington, 328 F.2d 760, 763 (7th Cir. 1964), cert. denied, 379 U.S. 818, 85 S.Ct. 35, 13 L.Ed.2d 29.

24. As the Fifth Circuit observed in Forrest v. United States, 363 F.2d 348, 350 n.1 (1966), cert. denied, 386 U.S. 995, 87 S.Ct. 1315, 18 L.Ed.2d 343: "The *Hon* case drew a vigorous dissent, and seems to stand alone even in the Seventh Circuit."

25. This opinion has been circulated to all of the active judges, none of whom has requested that the case be reheard en banc.