In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1597

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD J. MCGUIRE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 716-1—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED NOVEMBER 9, 2010—DECIDED DECEMBER 2, 2010

Before POSNER, TINDER, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant was convicted by a jury of traveling in interstate and foreign commerce for the purpose of having sex with a minor, and was sentenced to 25 years in prison. His appeal argues that while he indeed had sex with minors on trips that crossed state and national boundaries, sex was not the purpose of the travel. He further argues that the judge should have excluded the testimony of other minors, besides the one whom he was charged with molesting,

under Rule 403 of the Federal Rules of Evidence, on the ground that the additional testimony was unduly prejudicial. He does not challenge his sentence.

McGuire was a prominent Jesuit priest who in 1983 had begun serving as the spiritual director of Mother Teresa's order of nuns—the Missionaries of Charity—and as her confessor. A resident of Canisius House, in Evanston, Illinois, a dwelling for Jesuit priests, he led retreats all over the world modeled on the spiritual exercises of Saint Ignatius of Loyola, the founder of the Jesuit order. In 1997, when his molestation of a boy named Dominick began, he was elderly—67—and suffering from a long list of diseases, including diabetes and asthma, and disabilities resulting from frequent surgeries. He recruited boys such as Dominick to accompany him on his travels to the retreats, explaining that he needed the boys to carry his bags, to provide him with medications, physical therapy, and massages, and to wash his feet.

He used the boys for sex as well. Dominick was a fatherless child of 13 who became the defendant's ward. From 1997 to 2001 the defendant engaged in frequent sexual activity with Dominick, often on trips to retreats; the details of the activity need not detain us. He engaged in similar acts with the four other boys who testified, and indeed with many more. His sexual predation (which had begun long before—perhaps decades before—his molestation of Dominick began) involved the following *modus operandi*: sleeping in the same bed with the boys; receiving massages from them that began

innocently but evolved into sexual fondling of him that he commanded them to perform; displaying pornographic movies and magazines to "educate" the boys about sex and the "beauty of the human form"; eliciting confessions that they had masturbated and threatening to expose as a masturbator any boy who complained about molestation; and insistence that complaint would be futile because no one would believe that a priest of the defendant's prominence was a pedophile.

The defendant's religious superiors began to be suspicious of him as early as 1991, though he was not defrocked until 2008. In 1991 they ordered him not to travel with anyone under the age of 18. In 1995 the threshold was raised to 21 and in 2001 to 30. In 2000 they forbade his having his young assistants stay with him at Canisius House. He continued to travel with boys after being forbidden to do so. His defense at trial was that Dominick had concocted a false claim of sexual molestation in the hope of obtaining money.

The defendant was charged with violating 18 U.S.C. § 2423(b), which is one of four closely related provisions of the federal criminal code. The four are as follows:

> **18 U.S.C. § 2421**: Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

**18 U.S.C. § 2423(a): Transportation with intent to engage in criminal sexual activity.**—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

**18 U.S.C. § 2423(b): Travel with intent to engage in illicit sexual conduct.**—A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

**18 U.S.C. § 2423(c): Engaging in illicit sexual conduct in foreign places.**—Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

Section 2421 is the original Mann Act, as amended in minor respects. Section 2423(a), intended to protect minors from sexual predation, mirrors the Mann Act but imposes more severe penalties. Section 2423(b), the provision under which the defendant was prosecuted, was

added to expand the protection of minors still further; it punishes travel in interstate commerce even if no minor is transported, if the purpose of the travel is sex with a minor. (Prosecutors frequently use this section to prosecute persons who cross state lines to rendezvous with minors whom they meet in online chat rooms. See, e.g., *United States v. Buttrick*, 432 F.3d 373 (1st Cir. 2005).) Section 2423(c) was added to punish persons who travel in foreign commerce and have sex with a minor in the course of the trip regardless of what the defendant intended when he set out on it.

It is apparent that if, as the jury found, the defendant had molested Dominick on their travels, he violated sections 2421, 2423(a), and 2423(c). E.g., *United States v. Bonty*, 383 F.3d 575, 578 (7th Cir. 2004); *United States v. Snow*, 507 F.2d 22, 23 (7th Cir. 1974); *United States v. Hitt*, 473 F.3d 146, 150 (5th Cir. 2006). But inexplicably the government charged the defendant only with violating section 2423(b), which requires that the *travel* be for the purpose of engaging in illegal sexual activity. This charging decision (which the government's lawyer was unable to explain to us at the oral argument) enabled the defendant to argue that the purpose of his trips was merely to conduct retreats; sex was not the purpose but a welcome byproduct (if the government's evidence was believed) of the opportunities that the retreats created, as the boys were more vulnerable when far from home and the defendant's molestation of them was less likely to be detected by his religious superiors, who as we know had suspected him for many years of

being a child molester yet had taken no effective steps to protect young boys from him.

The courts have had trouble dealing with cases in which the travel prosecuted under section 2423(b) may have had dual purposes, only one of which was to have sex with minors. The statute says "the" purpose must be sex rather than "a" purpose, but in *United States v. Vang*, 128 F.3d 1065, 1068 (7th Cir. 1997), we approved a jury instruction which said that sex didn't have to be "the sole purpose" of the travel, though it did have to be "a dominant purpose, as opposed to an incidental one. A person may have more than one dominant purpose for traveling across a state line." To speak of multiple dominant purposes is not idiomatic, but given the evidence in *Vang* the precise wording of the instruction hardly mattered. Other cases, too, fasten on "dominant," but then define it down to mean "significant," "efficient and compelling," "predominat[ing]," "motivating," not "incidental," or not "an incident" to the defendant's purpose in traveling. E.g., *United States v. Julian*, 427 F.3d 471, 485 (7th Cir. 2005); *United States v. Hitt, supra*, 473 F.3d at 152; *United States v. Hayward*, 359 F.3d 631, 637-38 (3d Cir. 2004); *United States v. Meacham*, 115 F.3d 1488, 1495-96 (10th Cir. 1997); *United States v. Campbell*, 49 F.3d 1079, 1083-84 (5th Cir. 1995); *United States v. Ellis*, 935 F.2d 385, 390 (1st Cir. 1991); *United States v. Bennett*, 364 F.2d 77, 79 (4th Cir. 1966).

These verbal formulas are strained; the courts turn handsprings trying to define "dominant" as if it were a statutory term, see, e.g., *United States v. Miller*, 148 F.3d

207, 212-13 (2d Cir. 1998), which it is not. It would be better to ask whether, had a sex motive not been present, the trip would not have taken place or would have differed substantially. See, e.g., *United States v. Snow*, *supra*, 507 F.2d at 24; *United States v. Farley*, 607 F.3d 1294, 1335 (11th Cir. 2010); *United States v. Meacham*, *supra*, 115 F.3d at 1495-96.

We can place the blame for judicial preoccupation with the word "dominant" on the Supreme Court, which in *Mortensen v. United States*, 322 U.S. 369, 374 (1944), a Mann Act case, said that engaging in forbidden sexual activity "must be the dominant purpose of such interstate movement." That was dictum, because the sole purpose of the movement in question was to give several prostitutes an innocent vacation—that is, one in which they would *not* be plying their trade. There were not multiple purposes, of which one was sexual, so there was no occasion to identify a dominant purpose. But later cases, ignoring Justice Holmes's admonition to think things not words, have tended to treat "dominant purpose" as if it were the language of the Mann Act itself, and, later still, as if it were the language of the statutes, including 18 U.S.C. § 2423(b), that restate and extend the Act; and from the cases the term entered jury instructions. (The evolution of "dominant purpose" is considered at length in our opinion in *United States v. Vang*, *supra*, 128 F.3d at 1070-72.) The Fourth Circuit stated sensibly in *United States v. Bennett*, *supra*, 364 F.2d at 77, 78 n. 4, that "the 'dominant motive' test seems completely inappropriate in any case involving

multiple purposes, some of which were legitimate but one of which is proscribed by [section] 2421," and equally by section 2423(b). But the defendant does not challenge the jury instructions, so the only question is whether the jury was unreasonable in convicting him.

To answer the question we need to be clear about the meaning of the statutory term "travels"; that will get us further than worrying the word "dominant." To say that a sexual predator "travels" in interstate or foreign commerce to a retreat is not a full description of the travel in this case. He travels in interstate or foreign commerce to a retreat in the company of a boy he intends to molest—that is the full description. The purpose of the travel so understood is to engage in illegal sexual conduct. See *United States v. Meacham*, *supra*, 115 F.3d at 1495-96; *United States v. Ellis*, *supra*, 935 F.3d at 390-91.

At the oral argument we put the following hypothetical case to the defendant's lawyer. A man who travels frequently abroad on business has two assistants. One is an older woman. The other is young and beautiful. He needs only one of the assistants to accompany him; they are equally competent; but he chooses to take the young woman because he hopes to have sex with her. The purpose of his travel is business; but the purpose of his travel with this assistant rather than the other one is sex—legal sex, in the example, but that's not the point; the point is that the purpose of his choosing this particular way to travel is sex rather than business. Cf. *United States v. Snow*, *supra*, 507 F.2d at 24; *United States v. Meacham*, *supra*, 115 F.3d at 1495-96. The defendant's

lawyer was unable to distinguish the present case from our hypothetical case.

It would be different if in that case the traveling businessman had only one assistant, the beautiful young woman. He hopes that he might have sex with her on the trip, yet he would have made the same trip, taking her with him, even if he had had no such designs. In that event sex would not have been the purpose of the trip with her, but a possible bonus that could however have played no part in his decision to take the trip—he was ordered to take it and needed, for purely business reasons, to take the assistant with him. Compare *Hansen v. Haff*, 291 U.S. 559, 563 (1934) ("if the purpose of the journey was not sexual intercourse, though that be contemplated, the statute is not violated"), with *Ghadiali v. United States*, 17 F.2d 236, 237 (9th Cir. 1927) (the defendant "had a right to cause [his secretary] to be transported in interstate commerce in the discharge of her secretarial duties without transgressing the provisions of the law; but if, in addition to the secretarial duties, it was also his purpose to have sexual intercourse with her, and, entertaining such purpose, transported her in interstate commerce, he would be guilty").

After 1991 the defendant was forbidden to travel with minors to his retreats—and all the trips with Dominick took place after that. If a trip has dual purposes, one licit but intended to bolster an illicit sexual purpose, the sexual purpose is "the" purpose, in a reasonable sense of the word. Suppose a salesman employed by Sears Roebuck is directed by Sears to travel to Singapore to

sell clothes dryers there. Instead he travels to Bangkok because he wants to patronize child prostitutes. He sells some clothes dryers in Bangkok in the intervals between his visits to the child prostitutes and alters the invoices to make it seem that the sales occurred in Singapore. The purpose of his travel would be sex rather than business, though business would be transacted during the trip. See *United States v. Snow*, *supra*, 507 F.2d at 24; *United States v. Meacham*, *supra*, 115 F.3d at 1495-96; *United States v. Farley*, *supra*, 607 F.3d at 1335; *United States v. Bredimus*, 234 F. Supp. 2d 639, 646 (N.D. Tex. 2002), affirmed, 352 F.3d 200 (5th Cir. 2003). The defendant in our case had, so far as appears, broad latitude concerning the number and location of the retreats he led, and he configured his travels to optimize his sexual activity.

We turn to the defendant's objection to the testimony by the four other boys (like Dominick, adults when they testified) whom he molested. The district judge was concerned about the possibility of undue prejudice and helpfully placed on the record her pretrial discussion of the issue with counsel, facilitating appellate review. The testimony was admissible as evidence of the defendant's *modus operandi* (and thus not excludable under Rule 404(b) of the Federal Rules of Evidence, see *United States v. Zahursky*, 580 F.3d 515, 524-25 (7th Cir. 2009)) and it was also admissible under Rules 413 and 414 as evidence of the defendant's previous crimes of sexual assault and child molestation, demonstrating a propensity to commit such crimes. E.g., *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009).

Like other evidence, such testimony is subject to the limitations that Rule 403 places on evidence that is unduly prejudicial, confusing, or repetitious. *Id*. at 822-23. The judge was concerned lest the jury be overwhelmed by profoundly disturbing and highly emotional testimony of numerous witnesses, which would deflect the jurors from careful consideration of the only actual issue they had to decide, which was whether the defendant had traveled with Dominick for the purpose of sexually abusing him. On the basis of the striking similarities among the experiences of each of the victims, the judge tentatively ruled that she would allow the government to call one witness whom the defendant had abused besides Dominick, while reserving decision on four others until after the defendant's cross-examination of Dominick. In the end she allowed testimony by three others.

The evidence was material because the defense was that Dominick was a liar. Although the defendant himself did not testify, the defense presented more witnesses than the government—witnesses who testified to the defendant's sterling character. The evidence of the other boys established the defendant's propensity for, and *modus operandi* of, molestation of young boys and by doing so bolstered Dominick's testimony.

The defendant particularly objects to the boys' testimony about the shame and fear that dissuaded them from telling their parents or others about what he had done to them until they had grown up and escaped his control. But this testimony was invited by the brutal cross-

examination of Dominick by the defendant's lawyer and by the argument that Dominick's failure to tell anyone about what the defendant was doing to him until 2005, long after the sexual molestation had ceased (the defendant molested boys, and eventually boys become men), indicated fabrication. This argument entitled the government to elicit in redirect examination the reasons Dominick and the other boys had not revealed the defendant's acts soon after they occurred. See *United States v. Hensley*, 574 F.3d 384, 389-90 (7th Cir. 2010); *United States v. Plumman*, 409 F.3d 919, 928-29 (8th Cir. 2005); *United States v. Powers*, 59 F.3d 1460, 1464, 1467 (4th Cir. 1995).

AFFIRMED.