Brown, C.J.,
dissenting.
{¶ 42} Cable companies and satellite companies sell the same thing: pay-television service. But in Ohio they are not taxed the same. Satellite companies must collect the 5 1/2 percent sales tax; cable companies do not.
{¶ 43} Why the difference? When the tax bill was introduced, it imposed an equal tax regardless of seller. Cable-television lobbyists stepped in and drew the legislature’s attention to certain economic realities: the cable industry directly employs exponentially more Ohioans (6,000) than the satellite industries (a “nominal” number) and pays exponentially more taxes (over $100 million annually) than satellite (“nominal” amounts). According to the cable industry, “the proposed sales tax on cable service penalizes the cable industry for [its] deep roots in this state and rewards a competing out-of-state industry who profits from Ohioans.” That “out-of-state industry” is the satellite industry, which “[provides Ohioans with very few job opportunities,” “[d]oesn’t pay an appreciable tax of any kind anywhere in Ohio,” and “[p]rovides little support to local communities.”
{¶ 44} What the cable companies could see, the majority cannot: it is in Ohio’s economic interest to support the cable industry’s jobs and investment, and relieving the cable industry of the sales tax benefits that interest. I am all in favor of promoting employment and investment in this state, but as I read the law, this particular road is not open to us.
States May Not Impose Discriminatory Taxes to Favor Local Jobs and Investment
{¶ 45} The black-letter rule is clear. The Commerce Clause forbids states to discriminate against interstate commerce, and discrimination “ ‘simply means differential treatment of in-state and out-of-state economic interests that benefits *80 the former and burdens the latter.’ ” United Haulers Assn., Inc. v. Oneida-Herkimer Solid Waste Mgt. Auth. (2007), 550 U.S. 330, 338, 127 S.Ct. 1786, 167 L.Ed.2d 655, quoting Oregon Waste Sys., Inc. v. Dept. of Environmental Quality (1994), 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13.
{¶ 46} States have an economic interest not only in “mom and pop” businesses, but in all forms of local investment. So it ignores economic reality to focus narrowly on the location of ownership or headquarters. While local ownership and headquarters might benefit the local economy, the amount of benefit depends on jobs and revenue. And a business need not be locally owned or headquartered to benefit the local economy. For instance, one fairly suspects that the city of Marysville, if forced to choose, would take the Honda plant over any homegrown business, and perhaps over any dozen.
{¶ 47} This is common sense, and numerous cases confirm it. Local investment, not simply locally headquartered businesses, may not be promoted through discriminatory taxation. See, e.g., C & A Carbone, Inc. v. Clarkstown (1994), 511 U.S. 383, 392, 114 S.Ct. 1677, 128 L.Ed.2d 399 (“Discrimination against interstate commerce in favor of local business or investment is per se invalid * * *” [emphasis added]); Lewis v. BT Invest. Managers, Inc. (1980), 447 U.S. 27, 42, 100 S.Ct. 2009, 64 L.Ed.2d 702 (prohibited “local favoritism or protectionism” includes discrimination among businesses according to the extent of their contacts with the local economy or based on the extent of local operations); Fulton Corp. v. Faulkner (1996), 516 U.S. 325, 344, 116 S.Ct. 848, 133 L.Ed.2d 796 (“States may not impose discriminatory taxes on interstate commerce in the hopes of encouraging firms to do business within the State”).
{¶ 48} Local investment, of course, includes the creation or preservation of local jobs. The Supreme Court has accordingly found “parochial legislation” to be constitutionally invalid when “the ultimate aim” of the legislation is “to create jobs by keeping industry within the State.” Philadelphia v. New Jersey (1978), 437 U.S. 617, 627, 98 S.Ct. 2531, 57 L.Ed.2d 475; see also Baldwin v. G.A.F. Seelig, Inc. (1935), 294 U.S. 511, 527, 55 S.Ct. 497, 79 L.Ed. 1032 (the power to tax may not be used to establish “an economic barrier against competition with the products of another state or the labor of its residents”); South-Central Timber Dev., Inc. v. Wunnicke (1984), 467 U.S. 82, 100, 104 S.Ct. 2237, 81 L.Ed.2d 71 (“the Commerce Clause forbids a State to require work to be done within the State for the purpose of promoting employment”).
{¶ 49} Lower federal courts have recognized the same point. See, e.g., Pelican Chapter, Associated Builders & Contrs., Inc. v. Edwards (C.A.5, 1997), 128 F.3d 910, 918 (“patent economic protectionism” includes “[Reducing unemployment by discouraging the use of out-of-state labor”); Louisiana Dairy Stabilization Bd. v. Dairy Fresh Corp. (C.A.5, 1980), 631 F.2d 67, 70 (the Commerce Clause prevents *81 a state from burdening interstate commerce for the purpose of “preventing local economic disruption”); Mapco, Inc. v. Grunder (N.D.Ohio 1979), 470 F.Supp. 401, 412 (Commerce Clause is violated by a differential tax on high- and low-sulfur coal that is intended to “protect and favor the Ohio high-sulfur coal industry (both workers and management)” and prevent “the likely loss of jobs of Ohio coal miners”).
{¶ 50} Under these principles, the sales tax is unconstitutional. It treats sellers of the same service differently. That’s discrimination. It favors the sellers who invest locally and burdens the sellers who do not. That’s favoritism of in-state over out-of-state economic interests. Together, these features place the sales tax well within the prohibition of the dormant Commerce Clause.
The Sixth Circuit Decision in DIRECTV v.
Treesh Does Not Resolve This Case
{¶ 51} The majority follows the Sixth Circuit’s statement in DIRECTV, Inc. v. Treesh (C.A.6, 2007), 487 F.3d 471, 481, that “the dormant Commerce Clause is intended to protect interstate commerce, and not particular firms engaged in interstate commerce, or the modes of operation used by those firms.” Treesh derived this rule from a pair of Supreme Court decisions, Exxon Corp. v. Gov. of Maryland (1978), 437 U.S. 117, 127, 98 S.Ct. 2207, 57 L.Ed.2d 91, and Amerada Hess Corp. v. Dir., Div. of Taxation, New Jersey Dept. of Treasury (1989), 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58. For several reasons, I am not persuaded that Treesh provides the answer to this case.
{¶ 52} First, Treesh is not on point. It reviewed a materially different tax structure. Kentucky had imposed an even-handed sales tax that treated cable and satellite the same way. There was no discrimination; without discrimination, there is no Commerce Clause claim. Treesh boiled down to whether a state must charge cable companies for use of rights-of-way, see 487 F.3d at 479, a much different question from the one presented here.
{¶ 53} Nevertheless, it is true that Treesh went on to suggest that under Exxon and Amerada Hess, the Commerce Clause does not prohibit differential taxation of the cable and satellite industries. I do not agree that these cases save this tax.
Exxon and Amerada Hess Do Not Immunize Discriminatory Taxes
{¶ 54} Neither Exxon nor Amerada Hess allows discriminatory taxation so long as both sides may be called “interstate firms” or use different “modes of operation.” The plaintiffs in those cases lost because the court could discern no differential treatment of in-state and out-of-state interests.
*82 {¶ 55} In Amerada Hess, the plaintiff oil companies alleged that the state tax favored independent retailers who do not produce oil over oil producers who market their own oil. 490 U.S. at 78, 109 S.Ct. 1617, 104 L.Ed.2d 58. But as the court pointed out, nonproducing retailers may operate both in the taxing state and outside it, and the tax treated all nonproducing retailers the same. Id. As the plaintiffs failed to identify a discrete, favored state interest, Amerada Hess characterized the tax difference as resulting “solely from differences between the nature of [competing] businesses.” Id. The key word is “solely,” a word that cannot be used here.
{¶ 56} Similarly, in Exxon, the plaintiff oil companies alleged that the effect of a particular tax was to protect in-state independent dealers from out-of-state competition. 437 U.S. at 125, 98 S.Ct. 2207, 57 L.Ed.2d 91. But as the court pointed out, “there are several major interstate marketers of petroleum that own and operate their own retail gasoline stations,” and “in-state independent dealers will have no competitive advantage over out-of-state dealers.” Id. at 125-126. Thus, when Exxon stated that the Commerce Clause does not protect “the particular structure or methods of operation in a retail market,” it had already concluded that the challenged tax was not discriminatory.
{¶ 57} Neither case involved an identifiable in-state, out-of-state line. So these cases stand for the modest proposition that the Commerce Clause permits states to distinguish among differing kinds of businesses, so long as the distinctions do not favor local economic interests. (Such distinctions could be challenged under the generally more lenient Equal Protection Clause.) But operational differences do not immunize protectionist discrimination — indeed, Amerada Hess and Exxon prove the point: despite clear operational differences in each case, the court still looked for location-based discrimination. It simply could not find it.
{¶ 58} “[N]o single conceptual approach identifies all of the factors that may bear on a particular case.” Raymond Motor Transp., Inc. v. Rice (1978), 434 U.S. 429, 441, 98 S.Ct. 787, 54 L.Ed.2d 664. And more broadly, courts should “think things not words.” United States v. McGuire (C.A.7, 2010), 627 F.3d 622, 624, 2010 WL 4908001, at *3. However selectively those cases may be quoted, Exxon and Amerada Hess have little bearing here.
The Sales Tax Creates an Incentive to Invest in Ohio
{¶ 59} The majority also suggests that the sales tax provides no incentive for the satellite companies to locate infrastructure in Ohio. This is not true.
{¶ 60} All other things being equal, the sales tax does give incentive to pay-TV companies to distribute signals using in-ground cable instead of satellites. Indeed, if the satellite companies installed an in-ground cable network, they would *83 avoid the sales tax. Of course, given how much they have already invested in a different mode of delivery, that is an impossibly high price to pay.
{¶ 61} Following this point through, if the satellite companies did the unthinkable and installed an in-ground cable network, they would avoid the Ohio sales tax, and they would bring jobs, franchise fees, and property taxes to Ohio. This fact only confirms that favoring cable companies benefits in-state economic interests.
Reversal Would Not Expand the Scope of the Dormant Commerce Clause
{¶ 62} The majority does not address it, but the tax commissioner raises a form of the “floodgates” defense. He says that invalidating the sales tax would “create a nightmare for legislators and the courts to administer as no two interstate players have the same relative economic presence in each state in which they do business,” and this presence “could literally change by the moment as one business elects to move its infrastructure around the country.”
{¶ 63} The risk of deluge is overstated. This case could not recur without the following elements: (1) a materially identical good or service, (2) two competing industries offering the good or service using distinct methods or modes of delivery, (3) one method making heavy use of the state’s land and labor, with the other virtually bypassing the state’s economic infrastructure, (4) different tax treatment of the materially identical good or service, (5) favorable treatment of the local method over the nonlocal, (6) indications in the evolution of the tax that it was motivated by protectionism, and (7) no constitutionally valid explanation for the tax.
{¶ 64} I find it doubtful that such a fact pattern will often recur. The problem of comparing mismatched sets of “interstate players” is answered by the requirement that the favored and disfavored parties be similarly situated. See Gen. Motors Corp. v. Tracy (1997), 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761. That requirement — which is met here, as cable and satellite unquestionably compete— would head off most problems, including the tellingly short parade of horribles marched out by the tax commissioner. And if this fact pattern did recur, it is unobjectionable that the Commerce Clause would prohibit it.
The Compensatory-Tax Defense Would Not Save This Tax
{¶ 65} The majority does not address the tax commissioner’s affirmative defense, but for the sake of completeness, I will. A protectionist tax can be saved if “it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.” New Energy Co. of Indiana v. Limbach (1988), 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302. The “standards for such justification are high,” however, invoking “ ‘the strictest *84 scrutiny/ ” Id. at 278-279, 108 S.Ct. 1803, 100 L.Ed.2d 302, quoting Hughes v. Oklahoma (1979), 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250.
{¶ 66} The commissioner offers only one substantial nondiscriminatory justification: that the sales tax counterbalances the franchise fees that cable companies pay to local governments. This is the “compensatory tax” defense. See, e.g., Fulton Corp., 516 U.S. at 331, 116 S.Ct. 848, 133 L.Ed.2d 796. Often raised, this defense rarely wins. All of the following cases have rejected it: S. Cent. Bell Tel. Co. v. Alabama (1999), 526 U.S. 160, 169-170, 119 S.Ct. 1180, 143 L.Ed.2d 258; Fulton Corp., 516 U.S. at 331-344, 116 S.Ct. 848, 133 L.Ed.2d 796; Associated Industries of Missouri v. Lohman (1994), 511 U.S. 641, 648-649, 114 S.Ct. 1815, 128 L.Ed.2d 639; Oregon Waste Sys., 511 U.S. at 104, 114 S.Ct. 1345, 128 L.Ed.2d 13; Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue (1987), 483 U.S. 232, 244, 107 S.Ct. 2810, 97 L.Ed.2d 199; Armco Inc. v. Hardesty (1984), 467 U.S. 638, 642-643, 104 S.Ct. 2620, 81 L.Ed.2d 540; Maryland v. Louisiana (1981), 451 U.S. 725, 758, 101 S.Ct. 2114, 68 L.Ed.2d 576; Boston Stock Exchange v. State Tax Comm. (1977), 429 U.S. 318, 332, 97 S.Ct. 599, 50 L.Ed.2d 514. In the court’s own words, since 1937, it has “shown extreme reluctance to recognize new compensatory categories” beyond the sales-and-use-tax combination. Fulton Corp., 516 U.S. at 338, 116 S.Ct. 848, 133 L.Ed.2d 796.
{¶ 67} Even assuming that individually negotiated franchise fees in this case constitute “taxes,” the compensatory-tax defense does not avail the tax commissioner. First, the sales tax and the franchise fees are not “substantially equivalent,” that is, “sufficiently similar in substance to serve as mutually exclusive ‘proxies]’ for each other.” Oregon Waste Sys., 511 U.S. at 103, 114 S.Ct. 1345, 128 L.Ed.2d 13, quoting Armco, 467 U.S. at 643, 104 S.Ct. 2620, 81 L.Ed.2d 540. For the sales tax, the taxable event is a transaction, the sale of television programming. See, e.g., Howell Air, Inc. v. Porterfield (1970), 22 Ohio St.2d 32, 34, 51 O.O.2d 62, 257 N.E.2d 742. Franchise fees are not taxes on the privilege of purchasing, but compensate the local government for the costs incurred in allowing and regulating access to public rights of way.
{¶ 68} The real-world differences between the two industries confirm the legal conclusion that sales taxes and franchise fees cannot be equated. Cable must burden public property to deliver its signals — it must string cable on poles and bury it in the ground. Satellite does not impose these kinds of burdens, so requiring satellite companies to pay their proxy would not make sense.
{¶ 69} But whereas only cable engages in the activity that triggers franchise fees, both cable and satellite engage in the activity taxed by the sales tax — both sell television programming. Thus, sparing the cable industry the sales tax does not equalize the tax burden so much as it eliminates a cost advantage held by satellite — the ability to deliver service without using public rights-of-way.
*85 Orrick, Herrington & Sutcliff, L.L.P., E. Joshua Rosenkranz, and Jeremy N. Kudon; Steptoe & Johnson, L.L.P., Pantelis Michalopoulos, and Mark F. Horn-ing; and Calfee, Halter & Griswold, L.L.P., and Peter A. Rosato, for appellants.
Richard Cordray, Attorney General, and Lawrence D. Pratt, Alan P. Schwepe, Julie E. Brigner, Damion M. Clifford, and Barton A. Hubbard, Assistant Attorneys General, for appellee.
David Parkhurst; and Vorys, Sater, Seymour & Pease, L.L.P., and Robert J. Krummen, urging affirmance for amicus curiae National Governors Association.
Sutherland, Asbill & Brennan, L.L.P., and Eric S. Tresh; Walter Hellerstein; and Vorys, Sater, Seymour & Pease, L.L.P., Douglas R. Matthews, and Michael J. Hendershot, urging affirmance for amici curiae Time Warner Cable, ComCast, and Cox Communications.
John A. Swain and David C. Crago, urging affirmance for amicus curiae Ohio Cable Telecommunications Association.
Fleischman & Harding, L.L.P., Arthur H. Harding, Craig A. Gilley, and Micah M. Caldwell; and Ulmer & Berne, L.L.P., and Donald J. Mooney Jr., urging affirmance for amicus curiae Institute for Policy Innovation.
Roy Cooper, North Carolina Attorney General, Christopher G. Browning Jr., Solicitor General, Gary R. Govert, Special Deputy Attorney General, and Michael D. Youth, Assistant Attorney General; Mark L. Shurtleff, Utah Attorney General, and Annina M. Mitchell, Solicitor General, urging affirmance for amici curiae states of North Carolina, Utah, Delaware, Florida, Illinois, Kansas, Kentucky, *86 Maryland, Michigan, Mississippi, Missouri, Rhode Island, Tennessee, Virginia, and West Virginia.
*85 {¶ 70} Finally, even if franchise fees were fairly comparable, the sales tax exceeds the amount of the franchise fee. See Oregon Waste, 511 U.S. at 103, 114 S.Ct. 1345, 128 L.Ed.2d 13. The sales tax is currently 5 1/2 percent. R.C. 5739.02(A)(1). Franchise fees are capped at 5 percent of gross receipts. Section 542(b), Title 47, U.S.Code. But some localities have agreed to less. For example, the city of Delaware has charged a fee as low as 3 percent. And whether through a later reduction of franchise fees or an increase of the sales tax, these disparities could increase.
{¶ 71} In sum, the sales tax treats competing industries differently, effectively (and perhaps intentionally) favoring the industry with extensive local ties over the one with comparatively few. Such a law violates the Commerce Clause. For these reasons, I respectfully dissent and would reverse the judgment of the court of appeals.
Pfeifer, J., concurs in the foregoing opinion.
*86 Shirley K. Sicilian and Sheldon H. Laskin, urging affirmance for amicus curiae Multistate Tax Commission.
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Marcus W. Trathen, Charles F. Marshall, and Julia C. Ambrose; and Kegler, Brown, Hill & Ritter, L.P.A., and Paul D. Ritter Jr., urging affirmance for amicus curiae National Conference of State Legislatures.
Jones Day, Douglas R. Cole, and Erik J. Clark, urging reversal for amicus curiae Constitutional Law Professors.
Hinman & Carmichael, L.L.P., and John A. Hinman, urging reversal for amicus curiae Specialty Wine Retailers Association.
Mark C. Ellison, urging reversal for amicus curiae National Rural Telecommunications Cooperative.
Chester, Willcox & Saxbe, L.L.P., Gerhardt A. Gosnell II, and Donald C. Brey, urging reversal for amicus curiae Satellite Broadcasting and Communications Association, ACE Satellite, Buckeye Dish Installation, Inc., Cable Alternatives, Primeview Satellite, Kidwell Satellite, Richland County Satellite, Premiere Satellite & Electronics, Inc., Wells Family Equipment, Thobe TV, Felix Electronics, Vince’s TV & Appliance, Digi-Tech Satellite, Dudley Satellites, George’s Electronics, Inc., and Progressive Satellite.